## COMMONWEALTH v. WILLIAM SWITZER.

APPEAL BY DEFENDANT FROM THE COURT OF QUARTER SESSIONS OF MONTOUR COUNTY.

Argued March 3, 1890—Decided, April 28, 1890.

1. On the trial of an indictment for obstructing a street in a borough, incorporated in 1870, it was error to admit an official plan, adopted in 1887, but containing a recital that it was a draft of the borough laid out in 1818, as evidence that the locus in quo was a public highway, in the absence of proof thereof by the surveyor who made it, or accounting for the absence of the original.

2. In such trial, there being evidence tending to show that the premises containing the buildings alleged to obstruct the highway had for many years been occupied by tenants, it was error to instruct the jury in terms which might lead them to believe that the landlord was criminally responsible for the separate act of the tenants, if he knew of it and did not dissent.

3. It was error, also, in such trial, to suggest to the jury the probable extent of the punishment, in case a verdict of guilty were rendered; and the error was not cured by immediately subsequent and explicit directions that the jury, however, had nothing to do with the result of the trial, but must decide the cause according to the evidence.

Before Paxson, C. J., Green, Williams, McCollum and Mitchell, JJ.

No. 62 January Term 1890, Sup. Ct.; court below, No. 110 May Term 1888, Q. S.

Charge of Court below.

On May 29, 1888, the grand jury returned as a true bill an indictment charging William Switzer with having unlawfully erected, set up and maintained " a building in, on, upon and across a certain ancient and common highway," in the borough of Washingtonville, known as Third street, to the great damage and public nuisance, etc. The defendant pleaded, not guilty.

At the trial on September 16, 1889, the commonwealth, to prove the locus in quo to be a public highway, offered in evidence a map having the following recital: " Draft of the Borough of Washingtonville as originally laid out, Anno Domini 1818, together with such alterations as have legally been made ; as also the draft made of the several streets, as established by the town council upon the same, from surveys made in 1872 by H. C. Mills, approved the 3d day of October, 1887," signed by J. B. Seidle, A. C. Corson, John Andy, Council, Charles Mowrer, Burgess.

The defendant objected to the admission of map, (1), that the original draft from which this was alleged to be made was not produced, there being no evidence to show why it was not produced ; (2), that this draft could not be evidence of the existence of a street prior to the date of the making of the draft itself ; (3), that it was incompetent and irrelevant for the purpose for which it was offered.

By the court: Objection overruled, offer admitted ; exception.[1]

There was testimony that the premises owned by the defendant, abutting upon the street, had been occupied for many years by tenants under him, and that at the time the alleged obstructions were erected he was a boarder with his tenants. There was also testimony on the part of the defendant that the obstructions, if any, were caused by an extension of a part of the dwelling-house and the erection of certain out-buildings, all of which were the acts of the tenants.

At the close of the testimony, the court charged the jury in part as follows :

We would not send you out to-night, were it not for the fact that we will most likely need a jury early in the morning in another case, and with the hope that you will be able to agree we place this case in your hands this evening. . . . . .

Charge of Court below.

[Here in this case it would appear that in the year 1818 the town or the village of Washingtonville was laid out, and the streets, including Third street or East street, as it was called, were opened to the public travel, but unfinished. There were also parallel streets, as you will notice by the draft, the Weidenhammer and other drafts.] [2] They were also laid out, as has been pointed out to you. [The evidence upon the part of the commonwealth is, that this Third or East street was used by the public, some of the witnesses say, as much as some of the other streets parallel with it, and worked or improved and repaired by the authorities of the village as much as some of the other parallel streets.] [3]

It is scarcely possible in a village like Washingtonville, with a street running in the direction that this did, that it should be used as a thoroughfare by any large number of persons; that they have been seen at any one time to pass and repass upon it, as you observe here on Mill street in the borough of Danville. It would not be reasonable to expect it; it is not to be expected and not necessary; but, if it was used by even a few of those who are located in that community or vicinity, who reside there and who had occasion to use it; if it was necessary for them to use it, and if they did use it, then it was a sufficient use and acceptance by the public. These are questions entirely for you under the evidence, whether it was used at all, and whether it was dedicated by the original owner at the time, or at any time, during its existence as a village or a borough, and was accepted, or if it was used for a period of twenty-one years; we say, in either case that Third street would be a public highway. [If that land was dedicated to the public use as a public street by the owners of the land when the village was laid out, or the town plot made; and if their lands were divided into lots, and the lots run off and sold to the line of this Third street, and it was used by the public to any extent, then it would be a public highway.] [4] . . . . .

[A deed has been offered in evidence here . . . . . with recitals, back to former owners for a long period of time, showing that these lots were sold to the line of this street, at least on one side, reciting and mentioning East street. Now, if the owner or owners of these lots sold and conveyed them to individuals, prior to the ownership of William Switzer, he being

now the grantee of the former owners is bound by their dedication if they so dedicated and sold it. He would be bound, he would stand in the shoes of his grantors; he could not revoke or withdraw that dedication, any more than they could.] [5] . . . . .

Now, we say that if from 1818, or if for any period of twenty-one years continuously, the public had a right before that to the public use of this street, adversely or against the interests of the owners, that the occupation of it by these ladies and their buildings will not give them a title to it, if it was dedicated to the public, and was accepted and used by the public for a single day before they built there in 1846 or 1847, or subsequently. They moved there, I believe, in 1846 and put these buildings there subsequently. But, if this street was dedicated to the public a single day previously to that time, and was used by them, the dedication was complete; and their user of it for a period of more than twenty-one years will give them no right or rights as against the public. It is all a question of fact for you. . . . . [And we direct and say to you that the borough of Washingtonville, or the town or township of Derry, previous to its incorporation in 1870 or 1871, was a village or town laid down by plot or draft, and the town lots, if the evidence is to be believed here, were sold accordingly to that plot or draft.] [6]

[You must decide, gentlemen, under all the evidence in this case. You have nothing to do with the law or with the severity or unseverity of the sentence. Some comment has been made on both sides about what the result may be. It is usual in such cases that the court, in giving sentence, should specify particular compliance with these several rules, directing the defendant to remove the obstructions sufficiently to permit the public to pass and repass as they ought and have been accustomed to do as of right. It is not necessary, in such a town as the village of Washingtonville, that a thoroughfare fifty feet wide should be open and fit for travel throughout its entire breadth from sidewalk to sidewalk, or that it should be paved and smooth walks made, but it should be open so that convenient passage if necessary may be made. In our country roads on our hillsides or our high precipices and in our deep ravines in Pennsylvania, we may have some roads that are only

Charge of Court below.

required to be opened eight feet wide, wide enough for the passage of pedestrians and of a single vehicle in some places. In that place in Washingtonville, no doubt the removal of all the buildings on the street, except the addition to the dwelling-house, would be amply sufficient, permitting all parties to use it, to pass and repass with convenience and pleasure, and the sentence of the court would be under our discretion and governed accordingly.] [7]  [You have nothing to do with the result, the judgment of law, as it is called. It is your duty, if you believe that the evidence warrants a conviction, if you believe that this street was a public street, was intended for the good of that town and of the people in that locality; if you believe that it was devoted to public use, it is your place to say so by pronouncing the defendant guilty. If it was not, then you are to return a verdict of not guilty. It is entirely a question of fact for you, gentlemen, and we place it in your hands with what we consider sufficient instructions.] [8]

[There is a lease in evidence here that we have not spoken of. The attorney for the defendant desires us to say something to you in that respect. It appears that these ladies were tenants of William Switzer. You will judge from that whether he had knowledge of the erection or construction of this building. He was living in town where he could see the building, pass and repass it every day. If he did observe its erection and did not dissent; if he saw that being erected in that street and did not dissent, he would be liable; he would be held under the law to have assented; and, if the parties who erected it had any arrangement with the defendant, under such a situation of facts he could be made to pay for the erection. You will judge whether he is proved to have consented to the erection of these buildings. If he has, he would be guilty equally with the women who have testified that they did it.] [9]

The jury returned a verdict that the defendant was guilty. A rule for a new trial having been discharged, the court sentenced the defendant to pay a fine of one dollar, to pay the costs, to remove the nuisance complained of within sixty days, and to stand committed, etc. The defendant then took this appeal, assigning for error: 1. The admission of the common-

wealth's offer.[1] 2–9. The parts of the charge embraced in [ ] [2 to 9]

*Mr. H. M. Hinckley* (with him *Mr. Edward S. Gearhart*,) for the appellant.

That the map was inadmissible, counsel cited: Franey v. Miller, 11 Pa. 435; 1 Whart. on Ev., § 668; Birmingham Bor. v. Anderson, 40 Pa. 506.

*Mr. Wm. Kase West*, District Attorney, and *Mr. James Scarlet*, for the Commonwealth.

Counsel cited: Commonwealth v. Moorehead, 118 Pa. 353; Transue v. Sell, 105 Pa. 604; Pearl St., 111 Pa. 565; Schenley v. Commonwealth, 36 Pa. 52; Kopf v. Utter, 101 Pa. 27; Easton Bor. v. Rinek, 116 Pa. 1; Wartman v. Philadelphia, 33 Pa. 202.

OPINION, MR. JUSTICE MITCHELL:

This being an indictment for obstructing a public highway, it was incumbent on the commonwealth to prove the locus in quo to be a highway. This was undertaken upon the two grounds of user and dedication. The village of Washington-ville had existed for three quarters of a century or more, with streets, among which, as the commonwealth claimed, was East or Third street. But the village was not incorporated until 1870, and the official map was not approved by the borough council until 1887. This map, when offered in evidence, contained a recital that it was a draught of the borough as originally laid out in 1818, together with such alterations as had been legally made, and also a draught of the several streets as established by the town council from surveys made in 1872, etc. The map was not proved by the surveyor who made it, nor was the original draught of 1818 produced, or any reason given for the failure to produce it. There was therefore no evidence at all that this map was even a correct copy of the old one, and yet it went to the jury with the weight of its recital of the fact that the streets upon it, including the one in dispute, had been public highways since 1818. This, to the untrained mind of the jury, might well have seemed conclusive of the title by prescription, and therefore of the first requisite

step in the proof of defendant's guilt. The assignments of error which depend upon the admission and use of this map must be sustained.

The ninth assignment must also be sustained. In criminal cases the commonwealth must prove that the defendant himself did the act charged. There are, it is true, some exceptional cases where it is sufficient to prove the act of an agent, but no case goes so far as to convict a landlord for the act of his tenant, even though he knew of it, and did not dissent. The facts of the case were peculiar in this regard, and the jury might well have found, under the evidence, that the landlord, being a boarder in the tenants' house, was a joint occupant of the demised premises, and equally responsible for the act of obstruction. No doubt this was in the learned judge's mind; but the case having been given to the jury, as it appears from the opening of the charge, under some pressure for time, at the close of the day, the jury were instructed in such terms as might lead them to believe that the landlord would be criminally responsible for the separate act of the tenants, if he knew of it and did not dissent.

The same circumstances of the trial probably led to the unfortunate putting before the jury of the probable result of a verdict of guilty. It was no doubt inadvertently done, as both sides apparently had commented on the matter, and the judge almost immediately rectified the mistake by explicit directions that the jury had nothing to do with the result, but should decide according to the evidence. But a jury might be apt to understand it as in some degree a subject for their consideration, and in that aspect it was a dangerous error, which can hardly be considered cured by the subsequent directions.

The other assignments are so largly dependent on the points already discussed that they need not be separately considered.

Judgment reversed, and venire de novo awarded.