Mr. Justice Robb
delivered the opinion of the Court:
Before proceeding to analyze this statement, it will not be-amiss to review briefly cases which may throw light upon the-subject.
The first American case which we have been able to find bearing similarity to the present ease is that of Crawford v. State, 2 Yerg. 60, 24 Am. Dec. 467. In that case a juror having doubts as to the guilt of the defendant assented to a verdict of guilty, under an impression suggested by his fellow jurors that the governor would pardon defendant if the jury, by their verdict, recommended it. The supreme court of the State ruled that this was sufficient cause to set aside the verdict. The court-in its opinion stated that the verdict was “at the most the verdict of eleven, according to legal principles, which requires jurors to be governed by the evidence in finding their verdict, and not extraneous circumstances.”
The next case is that of Com. v. Switzer, 134 Pa. 383, 19 Atl. 681. That was an indictment for obstructing a street, and the-court, comment having been made during the argument of the' *141 case as to the result of conviction, said to the jury: “You must decide, Gentlemen, under all the evidence in this case. You have nothing to do with the law, or with the severity or unseverity of the sentence. Some comment has been made on both sides about what the result may be.” The court then proceeded to suggest the probable extent of the punishment in case a verdict of guilty was rendered, following that suggestion, however, with explicit directions that the jury hád nothing to do with the result, but should decide the case according to the evidence. The appellate court found that the suggestion as to the probable extent of the punishment was error, and was not cured by the directions that followed. The court, in commenting upon this suggestion of the trial court, said: “It was no doubt inadvertently done, as both sides apparently had commented on the matter, and the judge almost immediately rectified the mistake by explicit directions that the jury had nothing to do with the result, but should decide according to the evidence. But a jury might be apt to understand it as in some degree a subject for their consideration, and in that aspect it was a dangerous error, which can hardly be considered cured by the subsequent directions.”
In McBean v. State, 83 Wis. 206, 53 N. W. 497, the jury addressed this communication to the trial judge: “If we bring in a verdict of guilty, can we depend on the clemency of the court ?” to which the court responded in the affirmative. This was held reversible error. The appellate court said: “The question put by the jury to the trial judge in the case at bar was, in and of itself, harmless. The error consists of the promise made by the trial judge to the jury, to the effect that, if they found McBean guilty, they might rely upon him to extend the clemency of the court to the prisoner. It sufficiently appears from the verdict returned that the jury did rely upon such promise. The promise thus secured was well calculated to overcome reasonable doubts, and coerce an agreement for conviction. * * * It follows that any promise, pledge, or declaration of the trial judge, calculated to draw the attention of the jury from the evidence, and to induce them to base their ver *142 diet upon ulterior considerations, is necessarily misleading, and1 hence erroneous.”
State v. Kiefer, 16 S. D. 180, 91 N. W. 1117, 12 Am. Crim. Rep. 619, 1 A. & E. Ann. Gas. 268, was a case where the jury,, during their deliberations, sent the judge the following communication : “Gan the jury recommend the defendant to the mercy of the court?” To this the judge replied: “Yes; and I have made it an invariable rule * * * to follow such recommendations.” This was held prejudicial error, the appellate court saying: “This proceeding on the part of the court was clearly error. The answer to the question, while not. strictly in the nature of an instruction or charge by the court,, was nevertheless information conveyed to the jury, while-deliberating upon their verdict, calculated to influence them. * * * The jurors might very naturally conclude from the langauge used that they could rely upon him to extend clemency to the accused in case he should be convicted, and it might have the effect to induce the jurors to disregard any reasonable doubts they might have as to the guilt of the-accused.”
In Raymond v. United States, 25 App. D. C. 555, this court held it to be error for the trial court, upon the arraignment for sentence of a convicted person, and over his objection, in effect to reopen the case to receive evidence upon issues in the very casein which the accused had been found guilty.
In State v. Dodson, 16 S. C. 453, and in Williams v. People, 196 Ill. 173, 63 N. E. 681, both criminal cases, it was held that the mere declaration of the trial judge to the jury that they had nothing whatever to do with the consequences of their verdict, but were simply to determine the question of the guilt or innocence of the defendant, was not error, such language, it was held, being a mere invocation to the jury to do their duty regardless of the consequences.
The judgment was reversed in Hackett v. People, 8 Colo. 390, 8 Pac. 574, 5 Am. Crim. Rep. 320, because the court answered affirmatively an inquiry by the jury whether their verdict might be accompanied by a recommendation of clemency, when the law of Colorado prescribed a single punishment for- *143 the crime of murder, thus depriving the court of power to comply with such recommendation,—to the misleading of the jury.
In Lovett v. State, 30 Fla. 142, 17 L.R.A. 705, 11 So. 550, there was a statute providing that in homicide cases a recommendation to mercy by a majority of the jury should have the effect of reducing the punishment from death to imprisonment for life. The court held that, in view of this provision of the-statute, it was not error for the trial court to instruct the jury as to the effect of such a recommendation.
Gandolfo v. State, 11 Ohio St. 114, involved the question, whether it was error for the trial court to send to the jury, at their request, the statutes of the State, with a reference to certain sections relating to the offense of which the defendant was-charged. It was held that no error was thereby committed, as the court could not say that what was done operated, or might have operated, to the prejudice of the defendant.
The rule deducible from the foregoing cases may be thus-stated: "While it is permissible for the trial court to caution the jury not to be influenced by the probable consequences of their verdict, as all responsibility after verdict is with the court, it is error for the court to put before the jury any consideratious outside the evidence that may influence them, and lead to a verdict not otherwise possible of attainment. The deliberations of the jury should revolve around the evidence before them, and should be uninfluenced by other considerations or suggestions. The moment other suggestions or considerations find lodgment in their minds, that moment they stray from the path which the law has marked out, and their verdict, in consequence, does not rest solely upon the evidence. It is a colored and false verdict. When we consider that the existence of a reasonable doubt entitles a defendant to an acquittal, an'd that a very slight circumstance may affect the verdict, the danger from putting before the jury anything that may improperly influence their deliberations becomes more apparent.
■ It is an unpleasant duty for the citizen to be compelled to sit in judgment upon his fellow citizen, and it is a still more unpleasant duty to be compelled to vote for his conviction. It i& *144 .apparent, therefore, that if the jury receive the impression that the consequences of a conviction are not likely to be serious, .such an impression, in a doubtful case, will be almost certain to affect the verdict; and where that impression is obtained from the court, the consequences are all the more serious, for the obvious reason that the jurors will assume that the court has some object in mind when it indulges in such an intimation.
In the light of the foregoing, let us here briefly analyze the •observations of the court in the present case. The jury were first told that the legislature has left very wide discretion as to the punishment that may be inflicted for embezzlement; that there are cases merely technical in their character, and others that are very grave. The court then advised the jury not to feel embarrassed at all by any consideration of the consequences ■of their verdict, but to leave the matter where it belonged under the law. The court then told the jury that they were only to ■find whether the facts charged were made out, and then pro-needed to say: “And sometimes when a case comes to sentence, the court is able to receive light upon the question of motive and ■circumstances and matters affecting the question of sentence, which could not be introduced before a jury at all. So it is a great mistake for the jury to labor under any embarrassment by reason of what they may imagine a sentence may be.” Nor did the court stop there. It proceeded to emphasize what it had suggested in general language at the outset of its remarks. It ■said: “The statute does not require a defendant convicted of embezzlement to be sent to the penitentiary at all. He may be sent there, or he may be fined, or he may be fined and sent there; showing, as I said a momnt ago, the great scope of the punishment, depending on the circumstances as they may be ■shown to the court, in addition to what has appeared before the .j^y-”
Can there be any doubt that the jury had some reason to infer, and therefore might have inferred, that these words, coming from the court, to whom they looked for instruction and *145 guidance, meant that if they should convict the defendant, the court would in effect reopen the case and hear testimony “upon the question of motive and circumstances,” and that, as a result of such hearing, the court might conclude that the ends of justice would be subserved without sending the defendant to the penitentiary at all ? Can there be any doubt that such an understanding on the part of the jury would affect their deliberations to the injury of the defendant? Of course, everything the court said must be taken as applying to the case upon trial, as otherwise it would be misleading, and hence erroneous.
If the trial court, upon the evidence before the jury, was of the opinion that the ends of justice would require the sending of the defendant to the penitentiary in the event of his conviction,—and, of course, we do not for a moment intimate that such an opinion would not have been warranted,—it is apparent, we think, that the words of the court to the jury, from which a contrary intent might have been inferred, were misleading and highly prejudicial to the defendant. We have seen that a suggestion of probable clemency by the court (Com. v. Switzer, 134 Pa. 383, 19 Atl. 681) constitutes reversible error, and that, too, in a case where clemency actually was exercised. In this case the extreme penalty of the law was meted out to the defendant,—and again we do not wish to he understood as intimating that such a sentence was unduly severe or unwarranted under the evidence. We must, however, consider whether the verdict of the jury was in any way influenced by the suggestions of the court concerning sentence. No one will gainsay the proposition that in a criminal case there is just one issue before the jury,—Is the defendant guilty as charged? And it is equally clear that the determination of this issue is solely with the jury. Anything, therefore, tending in any appreciable degree to divert the attention of the jury from that issue, to create in their minds the impression that the court, to some extent, will assume their responsibility, is calculated to influence the action of the jury, and deprive the verdict of its most essential characteristic, that of independence. Thirty counts *146 were submitted to the jury, and the defendant was convicted upon but two. Having in mind that the defendant was acquitted of twenty-eight out of thirty counts; that it was possible for a member or members of the jury to have entertained a doubt as to the other two counts, we cannot escape the conclusion that the above language of the trial court was liable to prejudice the defendant. The jury were given to understand, as above noted, that the law did not require the court to send the defendant to the penitentiary at all; and that, if they reached a verdict of conviction, the court would hear evidence upon the question of motive. Such language may well have turned the scales against the defendant, and induced the juiy to vote “‘guilty” when otherwise they would not have done so; in other words, such language may well have introduced a new element into the case, and led the jury;, in their deliberations, away from the single issue which should have dominated them.
Mr. Justice Van Orsdel in delivering the opinion and judgment of this court in Pickford v. Hudson, 32 App. D. C. 480, had this to say concerning improper remarks of counsfel during his argument and its effect upon the jury: “It is not for us to say what effect these remarks might have had oh the jury. There is too grave a danger involved in the probable results of such an impression to permit of any speculation on our part as to its effect upon the jury. The probability of injury and injustice is so great as to leave but one safe course for u's to pursue, and that is to grant a new trial.” See also Frisby v. United States, 35 App. D. C. 513.
That the learned trial justice in the present case was apparently endeavoi-ing to overcome the effect upon the jury of remarks of counsel cannot affect our decision, for, as was'skid in the PicJcford Case, supra, “Two wrongs never make a right.”
As a retrial of this case may be had without the determination of the other questions here presented, we are constrained, without more, to reverse the judgment, and-remand the cause with directions to award a new trial.
Reversed cmd remanded. '