## Cummings *versus* Gann.

1. In a suit in which an innkeeper is a party, it is not a cause of *principal* challenge, that a juror is a temporary guest for pay with the innkeeper at the time of trial.

2. To authorize a principal challenge *propter affectum*, it must be shown that the party holds a position in which he might exercise control over the juror.

3. In replevin for a horse retained until the reward offered for its recovery should be paid, a telegram from another person to the owner, that he had the horse, was not evidence.

4. The plaintiff paid into court the amount of the replevin-bond, to remain " as a surety to the defendant in lieu of the bond," and the court ordered that the sureties in the bond be released from liability. *Held*, that this was error, and that the sureties were not thereby competent witnesses.

5. Bail for appeal from an award of arbitrators or a justice cannot be substituted by a deposit of money'; but may be by other bondsmen.

6. A telegram was directed to " Sheriff of Centre County," describing the horse and saying, " A reward of $50 will be paid for her recovery." *Held*, that this was a *general* offer, and bound the offerer to whomsoever recovered the horse.

7. The person recovering the property has a lien on it until the reward is paid.

ERROR to the Court of Common Pleas of *Centre county*.

This was an action of replevin, commenced November 9th 1864, by John Gann against R. D. Cummings, for a mare, in which the sheriff returned that he had replevied the property and delivered it to the plaintiff. The defendant pleaded *non cepit* and property.

Cummings was an innkeeper in Bellefonte : in the fall of 1864, two men on horseback stopped at his house. Suspecting their horses to have been stolen, he took possession of them, sent for the sheriff and had one of the men placed in custody—the other having escaped. Before Cummings sent for him, the sheriff had received this despatch from the plaintiff:—

" Jersey Shore, November 8th 1864.

" Rec'd. Tuesday November 8th 1864, 11 o'clock A. M.

" Stolen, on the night of November seventh, a black mare six years old next spring, with colt; star in forehead, small white streak down face, little to left, white left hind foot. A reward of fifty dollars will be paid for her recovery.

" JOHN GANN."

The despatch was shown to Cummings by the sheriff, and he had been told by a son of plaintiff that such reward would be offered. The mare was in the possession of Cummings, who claimed the reward. He allowed the son of the plaintiff to take the mare to a blacksmith shop near to be shod, which being done she was left there. The sheriff also claimed the reward, but offered to give Cummings half, which he declined, and said he would hold the mare till he got all. The reward was paid to the sheriff: the replevin was then issued, and the mare taken by the sheriff at the shop and delivered to the plaintiff's son.

[Cummings *v.* Gann.]

On the trial, principal challenges by the plaintiff were made to several jurors *propter affectum*, because they were boarders at the time of trial with the defendant at his inn. The court sustained the challenges against the objection of the defendant, and an exception was taken.

The plaintiff gave in evidence his despatch to the sheriff, and then offered the sheriff's reply, viz: :—

"November 8th 1864.

"John Gann,
 "Limestone Township,
  "Jersey Shore.

"I have mare corresponding to your description, also sorrel horse three years old, thief escaped but men after him.

    "R. Conley,
     "Sheriff."

Which was admitted by the court against the defendant's objection, and an exception taken.

The replevin bond was in the penalty of $400—George W. Tate and Alfred Gann being the sureties. That they might be witnesses the plaintiff, by leave of the court and against defendant's objection, paid into court $400, "to be and remain as a surety to the defendant in lieu of the bond taken by the sheriff," and it was ordered that "the obligors in said replevin-bond * * be released from all liability thereon." To this order, &c., an exception was taken. Tate and Gann, the obligors, were then severally offered as witnesses, objected to on the ground of interest, but admitted and exceptions taken.

The plaintiff then offered "in evidence the record of a suit Philip Newman *v.* R. D. Cummings, No. 115, November Term 1864. Replevin for one bay mare of the value of $65. Replevied and delivered to plaintiff 8th November 1864, in connection with proof that on the night of the 7th November 1864, Philip Newman, the plaintiff, came to the office of McAllister & Beaver, in which he (the witness) was a student at law, and desired a writ of replevin for the horse described in the writ, alleging that a horse thief had traded him a horse stolen in Clearfield county for his horse, which he understood was in the possession of R. D. Cummings; That witness wrote the *præcipe*, procured the writ, placed it in the sheriff's hands and went with Mr. Newman and the sheriff to Cummings's house; That Newman stated to Cummings that the horse described in the writ was his, that a horse thief had traded him a horse stolen in Clearfield county, and thus got from him the horse in Cummings's possession; That the owner of the horse traded to him had come on from Clearfield, proved his ownership and taken him away; That the sheriff opened the stable and delivered Newman the horse described in the writ, and Newman got on him and

[Cummings *v.* Gann.]

.started home." Which being objected to by defendant, was admitted and exception taken.

The court, amongst other things, charged :—

" In this case a telegraphic despatch was sent by the plaintiff to the sheriff of this county, notifying him of the theft, and offering a reward of $50 for the recovery of the horse. This despatch was retained by the sheriff in his own possession, and the defendant knew nothing of it until the horse had been placed in his stable ; and the sheriff, when he was brought there to arrest a person suspected of horse stealing, discovered that the horse in dispute answered the description given him by the plaintiff. [The despatch being directed to the sheriff specially, the offer of reward was to him individually, and we therefore instruct you that the defendant cannot claim the reward of $50 because he is not embraced in the offer.] * * * To us it seems that the offer was made to the sheriff to stimulate him to use extraordinary vigilance and activity to recover the stolen property. The despatch contains no direction to him to give notice of the theft and the reward offered ; but puts him on the alert, and offers him an inducement to extra exertion. [From this it follows as a necessary conclusion, that the defendant had no lien on the horse, and no right to detain him for the reward ; and if he did so, after request for its delivery by the plaintiff or his agent, the detention was wrongful.] This disposes of the issue joined upon the plea of property."

Also ; " George W. Tate testifies that up to the time when the plaintiff's son went to an attorney's office to procure the issuing of the writ of replevin, the defendant refused most positively to give up the horse unless upon payment of his demand of the entire reward. When the writ did issue and was served, he then alleged that the agent was a fool for issuing a writ for property of which he was already in possession. [But then he afterwards rules the plaintiff to declare, and then pleads, not *non cepit* alone, but up to the present moment he is insisting on the plea of property. He cannot be allowed to play fast and loose in this way ; first compelling the plaintiff to resort to legal proceedings, and then, when a writ is issued, denying that he has possession of the horse."]

Also ; [" Ordinarily, in cases like this, no more than compensatory damages for the wrongful detention can be given, but though this is the general, it is not a universal rule ; but where there are peculiar circumstances of oppression or vexation, the jury may go beyond it and give exemplary damages.] Under these instructions you will determine whether the plaintiff is entitled to recover. If he is, then you will find such damages as you think him entitled to under the evidence and the rules just stated to you."

There was a verdict for the plaintiff for $63.75.

The errors assigned were :—allowing the challenges ; admitting

the several offers of evidence excepted to; allowing the plaintiff to pay the amount of the replevin-bond into court and releasing the sureties; and the several parts of the charge contained in brackets.

*J. H. Orvis, C. J. Alexander* and *R. G. Durham*, for plaintiff in error, cited 1 Coke 156 *b*, et seq.; 3 Bl. Com. 277 *et seq.*; 5 Bac. Abr. 353; 4 Pa. Bl. 330 *et seq.*; 1 Coke 153 *a*, 157 *a*; Pipher *v.* Lodge, 16 S. & R. 214; Harrisburg Bank *v.* Foster, 8 Watts 304; Smull *v.* Jones, 6 W. & S. 122; Act March 21st 1772, Purd. 867; Etter *v.* Edwards, 4 Watts 63; Binstead *v.* Buck, 2 W. Bl. 1117; Nicholson *v.* Chapman, 2 H. Bl. 254; Amory *v.* Flyn, 10 Johns. 102; Wentworth *v.* Day, 3 Metc.

*McAllister & Beaver*, for defendant in error, cited 3 Bl. Com. 363; Pipher *v.* Lodge, 16 S. & R. 214.

The opinion of the court was delivered, June 25th 1866, by

THOMPSON, J.—The 1st and 2d assignments of error may be considered together. They relate to the challenges of several jurymen, *propter affectum*, for the reason that they were stopping for the time being at the "Cummings House," a hotel kept by the defendant. There was no allegation that they were gratuitous guests, or that they were not boarders on the same terms with others during the term of the court. This being so, we think it was no cause of principal challenge. If a cause of challenge at all it was to the *favour*, and this could only properly be determined by *triers:* 1 Coke 157 (a). It is true the line is not very distinct, at all times, between a cause of principal challenge and challenge to the favour. The one, however, is *triable* by the court, the presumption of *bias* arising from the facts disclosed; and the other, to the favour, is where the bias or favour is to be found as a fact. The challenge here was upon the presumption, that because the jurors ate, slept and lodged at their own expense at the public-house of the defendant, they could not be impartial jurors. The relation of tenant holding from year to year, to a party, has been held cause for a principal challenge: Pipher *v.* Lodge, 16 S. & R. 214. But it was held not to be cause of principal challenge that a juror was interested in a tract of land held by plaintiff under a similar title with that in contest: Gratz *v.* Benner, 13 S. & R. 110. I incline to think that was a case for challenge to the favour. All the authorities seem to be, that where the objection is not on account of relationship, to require it to be shown as a ground of principal challenge *propter affectum*, as between the party and juror, that the former holds a position in which he might exercise a control over the latter. Nothing of that is inferable from the ordinary relation of innkeeper and

guest. I think it is estimating integrity, under the sanction of an oath, especially, rather too cheaply, to hold it to be a legal presumption, that because a man summoned as a juror eats and sleeps in a public-house on the terms of paying, he is not *probus et legalis homo*, and fit to sit on a jury where his landlord is a party. If the rule were to prevail, it ought to be reciprocal, and the landlord be disqualified as a juror where his transient customer might be a party. We think the challenges should not have been allowed, and these errors are sustained.

The next assignment of error is to the admission in evidence of Sheriff Conley's telegram. Was this telegram to Gann, evidence between the latter and Cummings? He was not the agent of the latter, and stood in no relation to him by which his acts or sayings could legally affect him. This was an action of replevin by Gann against Cummings, who had claimed to retain the plaintiff's mare until he was paid the reward offered for recovering her. After he had taken her from the custody of the thief and put her in his stable, he sent for the sheriff to take the thief. Before responding to the call, the sheriff despatched a telegram to Gann that he had the mare, which the latter had telegraphed him had been stolen. On the trial, these telegrams were offered in evidence. The former was properly received, the latter was not. It had no effect whatever but an improper one, to wit, to induce the belief that Cummings did not capture the mare, and that the sheriff did; this was a fact, if true, to which the sheriff's sworn testimony could have been had, and about which his unsworn declarations in the shape of a telegram amounted to nothing. It was *res inter alios acta*, and prejudicial to the defendant. This assignment of error is also sustained. If there was any aspect in which such testimony would be competent, it was not in that in which it was offered and received.

The 4th and 5th errors may also be considered together. The plaintiff, wishing to avail himself of the testimony of his sureties in the replevin-bond, offered to pay into court the penalty of the bond in money, in discharge of the sureties. This the court permitted, against the objection of the defendant, for whose security the bond was given, and adjudged and declared the sureties relieved from their bond, and received them as competent witnesses, also against objection by the defendant.

By the 2d section of the Act of 21st March 1772, sheriffs and other officers, authorized to serve writs of replevin, are required to take a bond, with one or more sufficient sureties, in double the value of the property, conditioned for its return to the defendant if it be adjudged to belong to him. This being the requirement of the law, it could not be dispensed with by the sheriff and money substituted. The Act of 1806, which requires the directions of a statute to be pursued, forbids this. Could the court dispense with

the required security? Here the property was delivered to the plaintiff, and the bond stood for the return of it, if a return were adjudged. It was not conditioned to pay a sum of money alone, but for the performance of a specific act. It is true the defendant might proceed on the bond without first issuing a writ *de retorno habendo*, still he might choose to issue that writ, and in case of a return of the property on it he could only proceed on the bond for his damages. The security required by law is that of persons, not property, and the sheriff is also a sort of surety at least for the soundness of the bail, being responsible in case they prove insolvent. The substitution of money is not the requirement of the statute, nor its equivalent. If bail can be relieved as these were, the sheriff will also be relieved, and thus the security be diminished. It is possible also, as has been suggested, that money might fail, or its depositary prove insolvent. No resort in such case could be had to the sheriff and his sureties, and certainly not to the judge. There are cases in which the court may, I have no doubt, treat the bail as released on payment of money into court by its permission; but these are cases, I apprehend, in which the condition is for the payment of money. But I know of no authority to release bail from the performance of specific acts, as in replevin, by the same resort. No one would suppose that bail for an appeal from the award of arbitrators, or justice of the peace, could be substituted by the deposit of money, even by permission of the court.

In such cases bail might be substituted by other bondsmen, not by money. Whether substitution might not be made in replevin with the assent of the sheriff, I do not say; that is not this case; but I doubt if it could without releasing him from liability. The *substitution* of money is not the security given by the statute in replevin, and therefore we think the court erred in making the substitution and in declaring the sureties released and competent as witnesses. They were incompetent on the score of interest, not being legally discharged from their bond. These assignments are also sustained.

The 7th assignment of error is to the admission in evidence of the record of an action between the present defendant and one Philip Newman. It was also replevin for a horse lost, brought a year before the occurrence which gave rise to this controversy. It was proposed to accompany the record with testimony of what took place at the time of the issuing of that writ, and this was also admitted.

The learned judge, in admitting it, thought it might have some bearing upon the issue raised by the defendant's plea of " property," and his claim to retain the horse in dispute in this action until he was paid his reward. What that bearing was we cannot imagine, and are not informed. It was the record of a suit between other

parties, and as such was not evidence. If offered as inducement to the admission of something said or done in the trial or other proceedings of the defendant in that case, it should have been shown what that was, so as to make the record proper by way of inducement. If the purpose was to show the defendant litigious in such cases, it was improper; or that he had claimed to retain for his reward in another case and the result, it was equally improper; and if it was admitted without any definite object, so that it might operate just as the jury might see proper to make it, the error was the greater. Its admission was error *quacunque via data*. In any way it can be looked at, it was *res inter alios acta*. This assignment of error is therefore also sustained.

The 8th and 9th errors are to the charge of the court, in which the offer of the reward is discussed. We think the construction put upon it by the court was erroneous. It was not a special contract between the plaintiff and defendant (not so in terms), and the universal understanding of a general offer of reward is against it as well as the law. The object in making such offer is to stimulate efforts towards the recovery of stolen or lost property, and in this case not to the sheriff alone. Those are not its terms, but to any and every body. The recovery of the property was the object, and the hands by which the result should be accomplished were nothing to the plaintiff. It was as much an offer to Cummings as to the sheriff or anybody. It amounted to nothing unless to a successful party. It was but an offer until its terms were complied with. When that was done, it thenceforth became a binding contract, which the offerer was bound to perform his share of. We need not enlarge on this. We think the error here is very manifest. If the defendant was the rightful captor of the mare of the plaintiff, we think he was entitled to retain her until paid or tendered the promised reward. An innkeeper, veterinary surgeon and farrier each has his lien upon the horses delivered to their care in consequence of services performed upon them for their owner and at his request: see Cross on Liens 340, 341, 343; Story on Bailments 422. But this very question of lien in favour of the finder is asserted in Wentworth *v.* Day, 3 Metc. 352. I cannot see why it should not be so on principle. The service is to be performed for a reward offered, not especially to any one, but to any one who may undertake and perform the request. It is valuable towards both the owner and his property, and why should there not be a lien? The owner may live at a distance, and if the finder is required to yield up the property and then look to the owner, it might be great injustice to him; whereas it is no injury to the owner, who constitutes the finder his bailee by his advertisement to perform the services of seizure and taking care of the property. Such liens are favourites of the law: Green *v.* Fanner, 4 Burr. 2220; 9 Casey 151; 7 W. & S. 467.

[Cummings *v.* Gann.]

We think there was error in this portion of the charge, and this error is sustained.

There was no inconsistency in practice in putting the pleas of "*non cepit*" and "*property*" together, as was done in this case. It is the constant practice. The court seemed to treat it as somewhat reprehensible and deserving of notice as such. If the testimony is correctly reported, we think there was misapprehension by the learned judge on this point. The putting in of the pleas is the work of the attorney, and it is usually done without regard to the exact state of the facts, in order to meet every possible aspect in which they may be presented; but about this the client has usually nothing to do. We see no evidence that he had here. We do not think the defendant's case should have been made liable to be prejudiced in the minds of the jury by remarks against the pleading as being "fast and loose," and as not to be allowed. Any fact that looked like this was evidence to go to the jury, if applicable to the issue, to be considered by them in making up their minds as to his rights, not as a reason for a recovery against him.

We think, too, the intimation of the court about exemplary damages, as a proper measure in this case, was not what the case called for. It must be a rare case of misconduct on the part of a defendant in an action like this to authorize them at all. I do not say they may not be justly allowable in this form of action, but I think this was not such a case, if they are ever properly given in replevin. I waive discussion as to the rule in its application to this action, for I do not see that there was any occasion for reference to it shown in the evidence. The character of exemplary damages is punitive as well as compensatory, vindicatory as well as to make the party whole. There was neither injury nor wantonness towards the animal or the owner, that I can see. He permitted the plaintiff's son and agent to take possession of the beast to get it shod, and only detained her an hour or two on the ground that he claimed pay for his services in recapturing her from the thief. This we have seen he was right in doing. But even if the hypothesis of the plaintiff had been true that he had no such right, there was nothing disclosed to warrant exemplary damages in the case. It is not often that such damages are allowable in case of property. As the law of lien stands, the fault was on the side of the plaintiff if the detainer was occasioned because the reward he offered was not paid. The damages given very evidently show that they were not merely compensatory. They were sixty odd dollars for a detention of not over two hours. It is true the learned judge did, perhaps, in his charge, give the jury latitude enough to find only compensatory damages, by telling them that they might give such damages "under the evidence and rules stated" as they might think the

[Cummings *v.* Gann.]

plaintiff entitled to; unless, indeed, among the rules the jury may have thought that exemplary damages in the case were to be contained. We cannot say how this was. If this point stood alone as a ground of reversal, we might possibly, under the clause in the charge, hesitate to reverse; but it does not; and as the case goes back for retrial, we think the instruction complained of ought to be avoided, if on the evidence as it will then be presented under our ruling, there remains a chance of recovery to the plaintiff.

Judgment reversed, and *venire de novo* awarded.