## CATASAUQUA MFG. CO. v. J. W. HOPKINS ET AL.

### APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS OF LEHIGH COUNTY.

Argued February 3, 1891—Decided March 23, 1891.
[To be reported.]

1. When, upon the challenge of a juror for cause, the court sits in the place of triers, to determine the question of impartiality as a matter of fact, its determination thereof is conclusive and cannot be reviewed by the Supreme Court; although, when the juror's position is such that his incompetency is a conclusion of law, the rule is different.
2. A juror having testified upon his voir dire that he was on intimate terms with one of the defendants who was his customer, and that said defendant had talked with him on several occasions about the case, giving him statements of facts and explanations in regard to it, a challenge for cause should have been sustained: Per Mr. Justice WILLIAMS.
(a) A court rule provided that the plaintiff's bill of particulars should contain a full, direct and concise statement of his cause of action, and that evidence of facts outside of it should not be received. H. and S. were sued for a conspiracy to defraud by means of false reports, made by H., plaintiff's employee, of the amounts of iron purchased from S. at one of plaintiff's mills:
3. The court rule did not render inadmissible evidence of the commission of similar frauds by S., at another mill of plaintiff, in which H. was not concerned and which were not mentioned in the bill of particulars, the testimony being offered solely to show guilty knowledge by S. of the return of excessive weights of his iron, and to contradict a denial thereof by him.
4. In an action for a conspiracy to defraud, it is error for the court to call

Statement of Facts.

the attention of the jury to the fact that, if a verdict and judgment should be given for the plaintiff, the defendants will not be entitled to the benefit of the exemption laws and will be liable to arrest on a capias ad satisfaciendum.

5. It is error, also, to charge that, before finding against the defendants, the jury ought to be satisfied of their guilt by " clear and full evidence," and that the circumstances ought to be such as are inconsistent with the theory of innocence, even though the court add that the jury need not be satisfied beyond a reasonable doubt.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS, MCCOLLUM and MITCHELL, JJ.

No. 64 July Term 1890, Sup. Ct.; court below, No. 13 June Term 1889, C. P.

On April 23, 1889, the Catasauqua Manufacturing Company brought trespass against John W. Hopkins and Philip Storm for an alleged conspiracy to defraud the plaintiff. The defendants pleaded not guilty.

A jury was empaneled on January 20, 1890, when James C. Beitel, one of the jurors called, testified upon his voir dire as follows :

" Q. You live in Allentown ? A. No, at Catasauqua. Q. Do you know about this case ? A. Yes. Q. You heard it talked about ? A. Yes. Q. And you have read about it ? A. Yes. Q. From what you have heard of the case did you form or express an opinion in reference to the facts of the case ? A. No, I did not. Q. Could you try the case uninfluenced by anything you have heard or read ? A. Yes. Q. State whether any of the parties in interest, either the defendants, or those interested for the plaintiff, have talked to you about the case ? A. Of course, we were talking about it when the thing first came out. Q. You need not tell what you heard, or what you said, only whether they talked to you ; did you hear the defendants explain the case ? A. Yes. Q. You heard both of their explanations of it ? A. Not both, only one. Q. Did you hear any one representing the plaintiff explain it ? A. No, I did not. Q. Then, all that you heard from the parties you heard from one of the defendants ? A. Yes ; and from the newspapers. Q. The explanation that was given to you by one of the defendants, did that make any impression on you ? A. No, sir. Q. You formed no opinion

whatever from what he said? A. No, sir. Q. When was it that you were talked to by him; was it before or after you were drawn as a juror? A. It was before, and I think afterwards too. Q. When was the last time that you were talked to about it, by one of the parties? A. I might say we talked nearly daily, because we met each other often; and before this happened, you know, he always came to my store, and sometimes we talked about the thing, you know, and sometimes we did not. Q. When do you say was the last time he spoke to you? A. The last time we spoke about it I guess was a couple of days ago. Q. Do you mean about the facts of this case? A. Only said this you know, that they were ready to meet them. Q. When did he last speak to you about the facts of the case, about his explanation of the case? A. Well, he did not give me any facts at all, you know. Q. At no time? A. Not particularly. Q. I thought you said that he had given you his version of the case? A. Of course, you know, we spoke about different things. Q. You say you heard one of the defendants explain his view of the case when it came out? A. Yes. Q. You keep a store in Catasauqua? A. Yes. Q. And he is a customer of yours, this one that spoke to you? A. Yes. Q. And he comes to your store frequently? A. Yes. Q. And you are quite intimate? A. Yes. Q. Did he explain in this version that he gave you his view of the case; explain away the articles in the newspapers and the talk? A. Yes. Q. And since you have been drawn as a juror, he has talked to you about the case? A. Yes, of course, we talked about it, but the explanation was before I was drawn as a juror. Q. After you were drawn as a juror, was there any explanation, or any statement about the facts of the case? A. I do not believe there was, in talking about it afterwards."

At the close of this examination, the plaintiff challenged the juror for cause, upon the ground that, having had stated to him the version of the case of one of the defendants, he was rendered incompetent to sit as a juror.

By the court: The court cannot hold from this examination that the juror is disqualified. The challenge for cause is overruled; exception.[1]

The jury having been sworn the trial proceeded, and testimony was given for the plaintiff tending to establish the following facts:

Statement of Facts.

The plaintiff operated several iron mills, among which were one known as mill A, at Catasauqua, and one known as mill D, at Ferndale, about two miles distant from Catasauqua. The defendant Hopkins was in the employ of the plaintiff as assistant superintendent of mill A. The defendant Storm was a dealer in scrap-iron and sold his entire supply to the plaintiff, delivering a part of it at mill A, and a part at mill D. Such of the iron as was delivered in wagons at mill A was weighed there on the plaintiff's scales, which were under the management of Charles Delabord. Delabord made entries of the weights in a book kept by him, and made weekly reports therefrom to Hopkins, who in turn made weekly reports to the office of the plaintiff, on the basis of which Storm was paid. Other iron furnished for mill A came by rail, and was weighed at another place, reports of the weights being made by one Williams.

In a large number of the weekly returns made by Hopkins between January 19, 1886, and March 22, 1888, the amount of iron reported as having been delivered by Storm was much in excess of that weighed by Delabord as shown by his book. Storm was paid in accordance with the returns made by Hopkins, and during the period above mentioned he was paid about $16,000 more than he would be entitled to receive for the amounts of iron exhibited by Delabord's book. In twenty-two of the weekly reports of Hopkins, the discrepancy in the weight of No. 1 wrought-iron amounted, in each instance, to just 14,600 pounds. In a number of other instances, the discrepancy was 14,700 pounds, and in several instances, 14,500 pounds.

The plaintiff, having called to the stand R. S. VanHorn, made the following offer:

Plaintiff proposes to prove by this witness that on December 15, 1888, and on other dates, to wit, December 20, January 22, July —, February 19, February 27, and March 22, 1889, Philip Storm delivered car-loads of scrap-iron to the Catasauqua Manufacturing Company, at mill D, and returned the same as weighing a certain amount, for which weights he was paid by the Catasauqua Manufacturing Company; to be followed by proof that the weights so returned by him were false and excessive in each instance; offered for the purpose of showing Philip

Statement of Facts.

Storm's knowledge of the fact that excessive weights were being returned by him, and as bearing upon the question as to his being engaged in a conspiracy or device to obtain the moneys from the Catasauqua Manufacturing Company fraudulently,— without making any claim for those specific items.

Objected to as irrelevant and incompetent, and as not being a basis of claim as laid in the bill of particulars,* and objected to specially on the part of the defendant Hopkins as not being a circumstance which could affect him.

By the court: It might tend to show a guilty knowledge or intent on Storm's part, and might tend to show the fraud alleged by the plaintiff. It is at least evidence against Storm. The objection is overruled and bill sealed for the defendant.

By Mr. Wright: Q. Did you at mill D, on December 15, 1888, buy a car load of scrap-iron from Philip Storm? A. Yes, Lehigh Valley, 4291, was the number of the car.

Q. What date was that? A. On the 18th.

Objection renewed.

By the court: The court now change the ruling last made, and exclude the evidence offered. The plaintiff's case, according to the bill of particulars and plaintiff's opening, and as developed this far, is to recover for frauds alleged to have been

---

* The rules of the court below, upon the subject of bills of particulars, provide as follows:

"§ 61. A rule may be entered of course on either party to any action to furnish a bill of particulars; and, on failure to comply with such rule for twenty days after notice thereof to the party or his attorney, the court may enter judgment against the party in default. The plaintiff's bill of particulars shall contain a full, direct, and concise statement of his cause of action, and the defendant's a similar statement of the grounds of defence.

"§ 62. On the trial neither party shall be permitted to give evidence of facts outside of his bill of particulars." . . . . .

Under these rules, the plaintiff had been called on for a bill of particulars, and had furnished one giving notice that proof would be made of a conspiracy to defraud the plaintiff by means of fraudulent reports of weights made by Hopkins, and that such fraudulent reports were made between dates named, with the aggregate amounts of the weights reported by Hopkins and paid for by the plaintiff. In response to a rule for a more specific bill of particulars, the plaintiff furnished a supplemental bill, stating in detail each of the reports alleged to be fraudulent, the amount of excess of weight included therein, and the amount of the over-payment made to Storm in consequence thereof.

committed in furnishing iron at the company's mill at Catasauqua and known as mill A, and consists exclusively of claims for alleged frauds practiced by Hopkins reporting excessive weights of weighing at the company's mill at Catasauqua, and for that it is alleged that Storm was paid in excess of what he was entitled to.   The evidence now offered is to show that false weights were taken by Storm at another mill of the company, known as mill D, at Ferndale.   That this would be evidence generally, the court does not doubt; but the court is of the opinion that it is not contained in the bill of particulars. After the original bill had been filed, a rule was taken for a more specific bill, whereupon the statement filed November 19, 1889, was placed on record.   That is a tabulated statement of the plaintiff's claim, and what is now offered to be shown is not contained in that statement, nor in the original bill. . To receive this evidence would be to admit, against defendant's objection, evidence of which they were not advised by the bill of particulars.   The objection is sustained; exception.[2]

Plaintiff now renews the offer, and calls attention to the rule of court requiring the filing of a bill of particulars, which does not require that the party filing the bill shall set forth the evidence by which he proposes to prove his claim, but simply a detailed and itemized statement of the claim he proposes to establish.   The proof now offered is not offered for the purpose of establishing a claim against one or both the defendants, for the items as to which the proof relates, but, the plaintiff having already proved that Philip Storm was furnishing iron to the several mills of the Catasauqua Manufacturing Company, that John Hopkins returned to the office of the company false weights as to iron so furnished, that Philip Storm received the price based upon said false weights, we now propose to show that, at the same time, Philip Storm was delivering iron, under false returns made by himself, to the other mills of the plaintiff; as bearing upon the question of conspiracy, and upon the question whether it was a mere mistake of which Mr. Storm had no knowledge, or whether it was a conspiracy of which he had full knowledge.   We also call attention to the fact that the bill of particulars sets forth that these false weights were returned and that this money was paid by reason of a fraudulent conspiracy between Hopkins and Storm.   This evidence is of-

Statement of Facts.

fered as bearing upon the question of the existence of that conspiracy. We also call the attention of the court to the decision of Mackinley v. McGregor, 3 Wh. 369.

By the court: It is an effort to introduce evidence as to a material fact concerning which the bills of particulars did not give any notice. No further ruling is required. You have an exception down.

The defendants presented testimony tending to show that, from time to time, iron delivered by Storm at mill A was weighed by other persons than Delabord, and reports of the weights were made by those persons to Hopkins, and that sometimes Hopkins weighed iron himself; and that, in making up his weekly returns, Hopkins added to the figures reported to him by Delabord the amounts of the iron weighed by others. Each of the defendants testified denying the existence of any conspiracy or combination between them, and denying that the plaintiff had been defrauded at all, so far as they knew. Storm testified that the relations between himself and Hopkins were unfriendly and that he had frequently complained that Hopkins did not allow him the full weights for which he was entitled to credit, but that he could get no satisfaction, and Hopkins would tell him, if he did not think he was treated honestly to take his iron elsewhere:

" Q. What is the reason you did not leave the company?

Objected to as irrelevant.

By the court: I think it is proper in this case. The defendant being accused of a tort and a conspiracy, he may state why he did not quit dealing with the company, if he has any reason; exception. [3]

The witness then said that the plaintiff usually settled with him by giving him notes for the amount of his account, and that he had these notes discounted; that he was liable as indorser upon such notes to the amount of nearly $21,000; that he had heard the company was not in very good standing, and that he thought if he left they might " let all the notes drop." Having been asked on cross-examination as to a number of transactions at mill D, the witness was asked, on re-direct examination, whether he had ever knowingly returned any false weights at mill D, and answered: " Never, sir; it is not my practice."

Charge of Court below.

In rebuttal, the plaintiff re-called R. S. VanHorn and made the following offer :

Philip Storm having testified in chief, in defendant's case, that he furnished scrap-iron to the Catasauqua Manufacturing Company, for a series of years covering a period as to which the witness had just been asked as to both their mills, mill A at Catasauqua and mill D at Ferndale, and having also testified that in each instance he made correct and true returns to the company of the weights of iron so delivered by him, and received from the company only payment for the true weights, plaintiff now proposes to prove by this witness that on December 15, 1888, Philip Storm delivered to the company at mill D a car, L. V. No. 8045, as weighing 29,800, when in point of fact it weighed only 22,400; and also L. V. car No. 4515, as weighing 29,900, when the weight was only 24,000; and five other cars of January 2d, February 7th, February 19th, 27th, March 22d, all showing a large discrepancy in weight. This is offered, not for the purpose of establishing a claim for these excessive weights, but for the purpose of contradicting Philip Storm on a question material to this issue, as to which he was examined in chief by the defendant, and as bearing upon the question of the conspiracy to defraud this company.

Objected to, because the testimony was elicited from Philip Storm on cross-examination and not in his examination in chief, and the court at that time expressly stated that it would be confined to an examination of him to that extent; and as incompetent and irrelevant, and as not in the bill of particulars.

By the court: This evidence is excluded, as it was excluded when it was offered in chief by the plaintiff, because it is not in the bill of particulars. In the bill of particulars they claim only for alleged shortages at mill A, and this relates to mill D at Ferndale. The court permitted Philip Storm to be examined as to this matter, only for the purpose of showing the good faith with which he dealt with the company, and not as a basis for any claim by the plaintiff. The objection is sustained; exception.[4]

The testimony being closed, the court, ALBRIGHT, P. J., charged the jury in part as follows :

[The charge against the defendants, in this issue, is some-

Charge of Court below.

thing more than that of a simple indebtedness by them to the plaintiff.  The charge is one of tort, of wrong; and if there is a recovery, it will be, in effect, that the defendants pay to the plaintiff the amount of the verdict and judgment, and if it is paid that ends the proceeding.  One of the consequences, however, of this proceeding, is that if the judgment is not paid, unlike the case of an ordinary judgment for a simple debt, the defendants are not entitled to the benefit of the exemption law; and if it appears that the transaction involved fraud, as would necessarily be the case here, they could be imprisoned for several months, I think sixty days, if they did not pay the judgment.] [7]  So, if it should appear that the defendants, or either of them, is indebted to the plaintiff and nothing more, that, lawfully or by a mistake without knowledge of the mistake, he or they obtained the money which did not belong to him, then you cannot find against the defendants in this issue.  Before you can find against them, it must be proved that they acted unlawfully, that they contrived and dishonestly schemed to defraud the company, and that they did actually defraud it.  But, if it is proved that they acted fraudulently, unlawfully, then the plaintiff is entitled to a verdict for the amount of money that it was deprived of thereby. . . . . .

A fraud, such as this which is charged here, is not always proved by direct evidence, for reasons which I have already alluded to.  Often it must be proved by circumstances indicating the unlawful conduct; and where the circumstances convince a jury that the fraud was actually perpetrated, there may be a verdict against the defendants without direct evidence. But the circumstances which would warrant a verdict against the defendants ought to be such as clearly indicate the guilt of the party complained of, and the unlawfulness of the transaction.  [The circumstances ought to be such as are inconsistent with the theory of innocence.  Although this is not a criminal case, yet it involves moral turpitude, and therefore, before a jury find against the defendants, they ought to be satisfied by clear and full evidence that the defendants are guilty.  Unlike a criminal case, however, the jury need not be satisfied beyond a reasonable doubt.] [8]  And the law presumes every one to have acted honestly until the contrary is established, and therefore, in this case the burden is upon the

Charge of Court below.

plaintiff to satisfy you that the defendants were guilty of unlawful conduct such as is charged here. . . . .

You cannot convict these defendants, nor even Storm, of any alleged cheating at mill D at Ferndale, in this action. That is not in controversy here.  The court excluded evidence as to that, for the reasons which have been stated to you.  But the court permitted the defendant Storm, who had been examined and who had testified that he had not defrauded the company in this transaction at Catasauqua, or defrauded them at all, to be examined in regard to his dealings at mill D, on cross-examination, for this reason : that, if from his cross-examination, the plaintiff could show that he had acted dishonestly at mill D, it would help along the plaintiff's allegation that he had been dishonest also at mill A, at about the same time, and, if Mr. Storm's examination and his cross-examination show any dishonesty at the Ferndale mill, and you believe that that helps along the plaintiff's charge that he was dishonest at the Catasauqua mill, then you can consider it.  But if it is otherwise, you cannot consider it, and if his denial of having done anything wrong at Ferndale, if he denied it in his testimony, is believed by you, then that is the end of that branch of the case.

I have said to you that in this case there may be a verdict against Storm alone, or against Hopkins alone, and I now repeat that to you.  If you should be convinced that the company was defrauded by the one alone, and not by the other, then you could find against the one thus deemed guilty, for the amount that the company had thus lost.  But it strikes me, according to the plaintiff's presentation of the case, that if one is guilty both are guilty.  The foundation of the fraud alleged is the reporting of false weights.  Nearly all the iron that was weighed, and of the false returns of which the plaintiff complains, was weighed by Delabord at the company's scale at the Catasauqua mill.  Some was weighed occasionally by other parties, and it is said by the plaintiff that all that the others weighed also found its way into Delabord's books.  The defendant, however, says that a great deal of it did not enter into the books of Delabord at all, and it is said that on several occasions John Hopkins himself weighed, not on many occasions I believe ; but it is not alleged that John Hopkins weighed falsely,

Arguments.

and it is not alleged that Philip Storm weighed falsely. It is not alleged that Philip Storm carried from the weighmaster false weights to the clerk, to be entered on the books of the company by him. But it is charged that John Hopkins did that; and, if that view is correct, then Hopkins would be guilty in my estimation if Storm was, and Storm would be guilty if Hopkins was; unless you should believe that Hopkins cheated for Storm's benefit without expecting to derive any benefit himself, and without the knowledge of Storm, which, I need hardly say to you, would be a very unusual thing for an individual to do. . . . .

Now, is it true, is it proved, that on these many occasions there was a shortage, or a false weight, included in the returns to the company? . . . . .

—The jury returned a verdict for the defendants. A rule for a new trial having been discharged and judgment entered, the plaintiff took this appeal, assigning for error, inter alia :

1. The overruling of plaintiff's challenge.[1]

2–4. The refusal of plaintiff's offers.[2 to 4]

7, 8. The parts of the charge embraced in [ ] [7 8]

*Mr. Edward Harvey* and *Mr. R. E. Wright* (with them *Mr. J. Marshall Wright* and *Mr. A. F. Glick*), for the appellant:

1. It would be difficult to lay down a more mischievous rule than that parties can seek out and talk with jurors, explain their version of the case to them, and then have them sit upon the case. Jurors may not be disqualified because they have read and heard of the case, if they can try it impartially upon the evidence ; but even this departure from the venerable rule of practice is based upon necessity and intelligence. What necessity is there to have jurors who have received one version of the case from one of the parties? The challenge of Beitel for cause should have been sustained : Commonwealth v. Mosier, 135 Pa. 221. It is true, the juror did not sit at the trial, but when the challenge was overruled we had to resort to a peremptory challenge, and thus we were injured by being deprived of one of the four peremptory challenges to which we were entitled. In Comfort v. Mosser, 121 Pa. 455, it was held that a refusal to allow a juror to be examined was error, although the juror did not sit in the case.

Arguments.

2. The offer to show fraud by Storm at mill D should have been received. It was admissible when first made. The gist of the action was not the conspiracy, but the damage to the plaintiff: Laverty v. Vanarsdale, 65 Pa. 507; Hutchins v. Hutchins, 7 Hill 104; Jones v. Baker, 7 Cow. 445; Parker v. Huntington, 2 Gray 127; and hence in such actions there may be a recovery against all or any one of the defendants: Laverty v. Vanarsdale, supra. But, when there is evidence showing concert or collusion, the acts and declarations of all parties to the fraudulent transaction are competent: Hartman v. Diller, 62 Pa. 37; a very slight degree of collusion is sufficient: McDowell v. Rissell, 37 Pa. 164; and it is immaterial that the party was not concerned in the original concoction of the fraud, if he knowingly attempts to reap its benefits: Peterson v. Speer, 29 Pa. 479. See also: Bishop v. Long, 2 W. N. 671; Rundell v. Kalbfus, 125 Pa. 123; Collins v. Cronin, 117 Pa. 35; Leidig v. Bucher, 74 Pa. 65; Confer v. McNeal, 74 Pa. 112.

3. Great latitude is always allowed in the presentation of testimony to show fraud: Cover v. Manaway, 115 Pa. 339; Yerkes v. Wilson, 81* Pa. 9; Hyatt v. Johnston, 91 Pa. 196; Brinks v. Heise, 84 Pa. 246; Lowe v. Dalrymple, 117 Pa. 568; Heath v. Slocum, 115 Pa. 556; Batdorff v. Bank, 61 Pa. 179; and proof of similar fraudulent acts, perpetrated about the same time, is admissible upon the question of intent: Neff v. Landis, 110 Pa. 204; Mackinley v. McGregor, 3 Wh. 370. The fact that the bill of particulars did not set forth Storm's frauds at mill D, was not a sufficient reason for rejecting proof of them. They were not proposed to be shown as the basis of a claim for damages, but merely as bearing on motive and intent, and as a circumstance bearing on the fraud of the defendants. The office of a bill of particulars is merely to state specifically the cause of action, and it need not state the ground upon which the plaintiff seeks to recover, nor specify the proof by which his claim will be substantiated: 1 Tr. & H. Pr., § 474; Drake v. Thayer, 5 Rob. 694; Fullerton v. Gaylord, 7 Rob. 551; Bangs v. Ocean Bank, 53 How. Pr. 337; Moran v. Morrissly, 28 How. Pr. 100; 2 Am. & Eng. Ency. of Law, 250–252; Higginbottom v. Graw, 25 Hun 214; United Firemen's Ins. Co. v. Peoples' Bank, 12 W. N. 251; Gilpin v. Howell, 5 Pa.

53; 2 Saunders on Pl., 699; Babcock v. Thompson, 3 Pick. 446.

4. Even if inadmissible primarily, the testimony relating to mill D was certainly admissible in rebuttal. Storm testified that he had never knowingly returned false weights at that mill, and this denial was made, not upon cross-examination, but when he was testifying in chief. We had a right to contradict it and thus discredit him: 1 Whart. Ev., § 559; 1 Greenl. Ev., § 461; Stahle v. Spohn, 8 S. & R. 317; Masterson v. Masterson, 121 Pa. 605; Fehley v. Barr, 66 Pa. 196; Brubaker v. Taylor, 76 Pa. 83; Batdorff v. Bank, 61 Pa. 179. And it was error to instruct the jury as to the consequences of a verdict for the plaintiff. The jury were to decide the case upon the evidence, without regard to consequences, but they would naturally infer from the charge that the penal consequences must be considered: Commonwealth v. Switzer, 134 Pa. 383. The instructions as to the measure of proof were erroneous, also, being equivalent to a statement that the plaintiff's case must be proved beyond a reasonable doubt; and the vice of this was not cured by the subsequent statement that the jury need not be satisfied beyond a reasonable doubt.

*Mr. John G. Johnson* (with him *Mr. C. J. Erdman* and *Mr. William H. Glace*), for the appellees:

1. The juror Beitel before he was summoned had read the plaintiff's newspaper version of the case, and it was natural that Storm should tell him that he was innocent. It would have been proper for Storm to have asserted his innocence in print, and, if the reading of such an assertion would make the reader incompetent for service upon the jury, it will be impossible in these days to procure qualified jurors. The true test is, whether the person summoned has formed a fixed opinion. However, if any cause of challenge existed it was to the favor, and could be determined only by triers: 1 Co. (a). Having been submitted to the court, instead of to triers, it was decided on the conscience and discretion of the court, and the decision is not reviewable: Wirebach v. Bank, 97 Pa. 552; Cummings v. Gann, 52 Pa. 487.

2. The plaintiff's statement of claim and bills of particulars averred no cheating by Storm except through the alleged false

returns of Hopkins at mill A; and it was not claimed that Hopkins had anything to do with any false returns at mill D. Proof of them was therefore properly rejected, because the cause of action alleged was a wrong done by both defendants jointly, of which neither could be guilty alone, and because no notice of it had been given in the bills of particulars. The office of a bill of particulars is to point out the facts and circumstances on which the case is to be rested: Gilpin v. Howell, 5 Pa. 54. The plaintiff's offer proposed to show facts outside the bill of particulars, and these the rule of court excludes. How could we be prepared to meet them? Nor was the offer admissible in rebuttal. It is entirely incorrect to say that Storm introduced this subject in his examination in chief. He had been asked about it upon cross-examination, and then, upon re-direct examination, it was merely touched upon by way of explanation.

3. The plaintiff's argument, under the seventh assignment of error, is rested upon Commonwealth v. Switzer, 134 Pa. 383. In that case, the judge trying an indictment, without any possible excuse for so doing, indicated to the jury the probable sentence in case of conviction. Here, however, knowledge of the distinction between the different kinds of actions, and the nature of the action on trial, became necessary for the jury. Character was involved, and it was proper for the judge to impress the jury with the magnitude of the duty they were to perform. No man, even in a civil action, should be found guilty of a crime, by a jury kept in ignorance of the effect of their finding. And there was no error in the instruction as to the measure of proof. By " clear and full evidence," we must understand ample, sufficient, adequate evidence, not perfect evidence. Even the word, indubitable, in this connection, would not mean absolute or perfect: Spencer v. Colt, 89 Pa. 314.

OPINION, MR. JUSTICE WILLIAMS:

The plaintiff is a manufacturer of iron. Philip Storm is a dealer in old iron, who made large sales of scrap- and wrought-iron to the manufacturing company. Hopkins was an employee of the company, who weighed the iron delivered by Storm and reported its quantity to the book-keeper. The plaintiff charged

that Storm and Hopkins conspired to cheat and defraud the company in the weight of the iron delivered by Storm at its mills, and that, in pursuance of this conspiracy, Hopkins returned each week, for about two years, the weight of the old iron delivered by Storm, during the week, at fourteen thousand six hundred pounds more than it really was, and that Storm, with full knowledge of the facts, received regularly pay for the false and fraudulent weights returned. On the trial, James C. Beitel was called as a juror, challenged for cause, and examined on his voir dire. The examination disclosed the following facts: That he was on intimate terms with one of the defendants, who was his customer; that this defendant had explained to him the nature of the plaintiff's claim, and given his own "view of the case;" had "explained away the articles in the newspapers, and the talk" about the charge made against him; that such interviews had occurred on several occasions before and after Beitel was summoned as a juror, the last of them having taken place after both were in attendance upon the court, and but a day or two before the trial was entered upon. We find it impossible to understand why this challenge was not sustained, but it was not. It was dependent on the fact, to be found by the court, of the impartiality of the juror, and this may be conclusive in that class of cases where the court sits in place of triers to try the question of impartiality: Wirebach v. Bank, 97 Pa. 543. When the position of the juror is such that his incompetency to sit is a conclusion of law, a different rule prevails: Cummings v. Gann, 52 Pa. 484. We do not reverse this case, therefore, because of the action of the court below in overruling this challenge, although we think it should have been sustained, but proceed to consider the other questions raised.

Upon the trial, the plaintiff offered to prove that Storm had delivered several car-loads of old iron to the plaintiffs at mill D, for which false weights were returned by him to the company, and payment received by him. This constituted no part of the claim in this case, and was offered only for the purpose of showing knowledge on the part of Storm that excessive weights of iron sold by him, were returned to the company, and paid for by it in accordance with such returns. It was rejected by the court. After Storm had testified as a witness

that he had no knowledge that excessive weights had been returned, it was again offered for the purpose of contradicting him, and was again rejected. The learned judge gave the reason for his ruling as follows: "This evidence is excluded, as it was excluded when it was offered in chief by the plaintiff, because it is not in the bill of particulars." The rules of court for the Common Pleas of Lehigh county provide at § 61 that " the plaintiff's bill of particulars shall contain a full, direct and concise statement of his cause of action." If this evidence had been offered in support of the cause of action, the rule of court would have been applicable; but it was not so offered. It was offered in the first instance to show Storm's knowledge of fraudulent over-weights of his iron, and his adoption of them and receipt of money because of them. It was offered next for the purpose of contradicting Storm. The rule of court, therefore, presented no obstacle to its admission.

The seventh assignment of error relates to that part of the charge which instructed the jury in the consequences to the defendant of a finding against him. This was a mistake. The jury should determine questions submitted to them, upon the evidence, and not upon the possible consequences of a given verdict to either party: Commonwealth v. Switzer, 134 Pa. 383. Whether the defendant is able to pay a judgment if one is entered against him, whether he will be entitled to the benefit of the exemption laws, or liable to arrest on a capias ad satisfaciendum, are questions with which the jury have nothing to do. They can serve no other purpose than that of enlisting the sympathies of jurors in behalf of defendants, and so obscuring the real questions to be decided.

The eighth assignment is also well made. The learned judge, in speaking of the measure of proof necessary, gave this instruction to the jury: " Although this is not a criminal case, yet it involves moral turpitude, and therefore, before a jury find against the defendants, they ought to be satisfied by clear and full evidence that the defendants are guilty." He went on to say that they need not be satisfied beyond a reasonable doubt, but told them the circumstances relied on by the plaintiff " ought to be such as are inconsistent with the theory of innocence." But if the circumstances disclosed by the evidence were so convincing as to be inconsistent with, and so to ex-

Opinion of the Court.

clude, the theory of innocence, they would exclude a reasonable doubt of the defendants' guilt. The learned judge was really giving the rule which he did not intend to give, and was telling the jury, in effect, that the evidence must be so strong as to exclude a reasonable doubt, or the defendants would be entitled to their verdict.

What was the measure of proof which it was incumbent on the plaintiff to furnish? In actions of the usual kind involving rights of property, a mere preponderance of the evidence in the minds of the jury is enough. The verdict should follow the weight of the evidence. When the plaintiff's cause of action is founded upon a crime imputed to the defendant, something more is necessary. The presumption of innocence comes into the case in aid of the defendant, and it must be overcome by evidence so preponderating as fairly to lead to the conclusion that the act complained of was committed. If the crime is prosecuted on behalf of the public, with a view to the punishment of the criminal, then, in favor of the life and liberty of the citizen, a still higher measure of proof is required, and the guilt of the defendant must be established beyond a reasonable doubt. In this case, the plaintiff was seeking to recover damages for the personal injury inflicted on it by the defendants' wrongful acts. If the evidence led fairly and satisfactorily to the belief that the defendants had obtained money from the company by means of a false return of the weight of iron delivered to it, then the plaintiff's case was made out, and a verdict should have been rendered accordingly. If it did not lead the jury to believe that over-weights had been knowingly returned, and money received by means of them, by proofs that fairly led up to such a conclusion and justified it, then the defendants were entitled to a verdict in their favor.

The judgment is reversed, and a venire facias de novo awarded.