# Rosenagle, Appellant, *v.* Handley.

*Charge of court—Irrelevant matter—Sympathy.*

The court should not call the attention of the jury to the possible consequences of a given verdict to either party, the effect being to enlist the sympathies of the jury and obscure the real questions to be decided.

In an action of trespass to recover the amount of an investment made by plaintiff in a company in which defendant was interested, and by reason of alleged fraudulent representations of defendant, it is error for the court to call attention of the jury to the fact that defendant had held a high and honorable position in the community and that his reputation was at stake: Catasaqua Mfg. Co. v. Hopkins, 141 Pa. 30, applied.

Argued Feb. 25, 1892.    Appeal, No. 225, Jan. T., 1892, by plaintiff, Mary Ann Rosenagle, from judgment of C. P. Lackawanna Co., June T., 1887, No. 281, on verdict for defendant, John Handley.    Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM and HEYDRICK, JJ.

Trespass to recover money invested through alleged fraudulent representations of defendant.

The evidence on the trial before CONNOLLY, J., was to the following effect: Defendant was counsel for plaintiff in an action on an insurance policy, but before the claim was collected defendant was elected additional law judge of Luzerne county, and the suit was concluded by J. H. Campbell.    When the money was paid plaintiff gave it to defendant to invest in stock of the Wyoming Mfg. Co., of which he was president. Plaintiff alleged that she was induced to make the investment by fraudulent representations of defendant, which representations were denied by defendant.

Defendant, called as if upon cross-examination, was asked:

" Q. At the time this suit was brought was the company in a solvent condition?"    Objected to; objection sustained and exception. [10]

Defendant offered in evidence the power of attorney from Mrs. Rosenagle to J. H. Campbell, which had already been

identified and read; also agreement between plaintiff and defendant for collection of insurance money. Objected to as immaterial and irrelevant; objection overruled, evidence admitted and exceptions. [11, 12]

The court charged in part as follows:

"Before Judge Handley was able to enforce the collection of that claim according to due process of law, the people of this county saw fit to elevate him to the honorable and dignified position of additional law judge of Luzerne county, and subsequently, through the mutations of politics and time, he necessarily, by the seniority of his commission, became the president judge of Lackawanna county, which was cut off from the parent county of Luzerne. [1] . . . .

"Mrs. Rosenagle alleges that on this 18th day of December, she being desirous of investing her money, that Judge Handley requested her to put it either in United States bonds, in bonds of the county of Lackawanna, in bank stock, or invest it in the stock of the Wyoming Manufacturing Co. [2] . . . .

"Here is a man, the defendant in this case, who has held a high and honorable position in this community. He is charged with being the perpetrator of a fraud. He comes into this court, and upon his solemn oath declares the facts are not as stated by the plaintiff. In his statements and in his denials he is highly corroborated. [3] . . . .

"It is for you to say, by your verdict, whether or not, in the transactions and negotiations that took place between Judge Handley and this lady, in the settlement of her insurance claim with him, she was practised upon by him, or whether or not Judge Handley's actions and conduct have been honorable and honest throughout." [4] . . . .

"This lady's memory is defective in reference to several facts. In the first place, when questioned as to whether or not she had employed J. H. Campbell as her attorney, she denied it. We say to you now, as a matter of law, and we take judicial notice of it, that at the time this case was settled, Judge Handley was not, and could not be attorney-at-law for this lady; whether he was attorney-in-fact, we do not propose to say; but as attorney-at-law he could not be, under the laws of this commonwealth, and under the constitution of this state, because no judge in commission can be attorney-at-law for any

litigant on the one side or the other of any case. · He might, however, have been her attorney-in-fact for the purpose of a settlement of this claim. [5] . . . .

" Outside of the matters upon which we have been called upon to charge you specifically, which we will do further on, we say to you, gentlemen of the jury, as a matter of law, if on the 18th day of December, 1883, you find that this company was an insolvent company, and that Judge Handley, through fraud and misrepresentation, and by reason of the confidential relations which existed between himself and this lady, induced her to part with her three thousand dollars, and invest it in this concern, and he knew this company was insolvent and unable to pay dividends, or that it was liable to become insolvent immediately thereafter, its condition at the time being such as to warrant him in that belief, then this plaintiff is entitled to recover the sum of three thousand dollars, with interest from the 18th of December, 1883, less the amount of dividends paid by him to her thereupon.  But, if you find, from the evidence in this case, that, on the 18th day of December, 1883, this company was solvent, and that Judge Handley had every reason to believe that it was solvent, and that he was in that company in good faith, and in good faith recommended it to this lady under her own testimony, under his testimony, and under the testimony of Mr. Evans, that she went into this with her eyes wide open, and that Judge Handley told her, after having handed her a prospectus and told her to think it over, over night, to come back and let him know the next morning, which Mr. Evans testifies she did, and that he did that in good faith, then there can be no recovery. [6]

" There is a principle underlying this case, gentlemen of the jury, which, perhaps, is more precious to a man than bonds and gold; it is a man's reputation.  In this case the reputation of the defendant is at stake. [7]

" But it makes no difference to you nor to me, gentlemen of the jury, how much a man's reputation is at stake.  If you find that a fraud has been committed, or a fraud has been practiced, then both you and I are bound, under our oaths, to say so. But you must not presume that a fraud has been committed; you must not presume it; you must find it, and you must,

under your oaths, find it from the evidence. Fraud is never to be presumed; it is always to be proven." [8]

Plaintiff's point was as follows, among others:

"4. If the jury believe that the defendant undertook to act as the attorney and legal adviser of the plaintiff, and that the plaintiff relied upon the representations made to her by defendant as such, to the damage of the plaintiff, she is entitled to recover, though the jury should find that the defendant was not a practicing attorney at the time. *Answer :* If you find from the evidence that the defendant intended to practice a fraud on the plaintiff, then this point is affirmed." [9]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1-9) instructions, quoting them; (10-12) rulings on evidence, quoting bills of exceptions.

*C. H. Soper, J. W. Oakford* with him, for appellant.

*Henry W. Palmer, Lemuel Amerman* with him, for appellee.

OPINION BY MR. JUSTICE STERRETT, October 3, 1892.

While the rulings and instructions of the learned judge were, in the main, correct, or at least free from manifest error, some of them were calculated to mislead the jury and divert their minds from a proper consideration of the real question before them, and thus to prejudice the plaintiff's case. The 1st, 2d, 3d, 5th, 6th and 7th points for charge, submitted by her counsel, contain clear and admittedly fair statements of questions raised by the evidence and proper for the determination of the jury. For example, in the first three of these points the court was requested to charge:

"1. If the jury believe that the defendant represented to plaintiff, on December 18, 1883, that the Wyoming Manufacturing Co. was in a solvent condition, was paying six per cent dividends on stock, that the stock was worth $100 per share at that time, and that defendant had $50,000 invested in the stock of said company, and that such representations were false, and that plaintiff relied upon such representations, and would not have taken stock in said company had it not been for such misrepresentations, then the plaintiff is entitled to recover."

"2. If the jury believe defendant represented to plaintiff, on December 18, 1883, that the Wyoming Manufacturing Co. was located in the Wyoming Valley of Pennsylvania, and the

plaintiff relied upon such representations and was induced thereby to take stock in said company, which she otherwise would not have done, then plaintiff is entitled to recover."

"3. If the jury believe defendant was, on the 18th of December, 1883, president and stockholder of the Wyoming Manufacturing Co., he was bound to know the financial condition and all about said company, and having undertaken to inform the plaintiff concerning said company he was in duty bound to tell the plaintiff the whole truth concerning said company."

These, and the other three equally clear and pertinent points, were all affirmed without qualification, and of course they are not assigned for error. If all the instructions were as clear and pertinent to the case presented by the evidence as these are, the plaintiff would have no just reason to complain of the court; but they are not.

While the statement—personal to the defendant—recited in the first specification of error may be historically correct, it was at least wholly irrelevant. Standing alone, it might be regarded as innocuous, but it opened the way for other irrelevant personal statements that were not so harmless, notably that recited in the 3d specification of error, viz.:

"Here is a man, the defendant in this case, who has held a high and honorable position in this community. He is charged with being the perpetrator of a fraud. He comes into this court, and upon his solemn oath declares the facts are not as stated by the plaintiff. In his statements and in his denials he is highly corroborated."

To an attentive reader of the testimony returned with the record, it may perhaps appear to be putting it a little too strongly to say, that " in his statements and in his denials he (defendant) is highly corroborated." Many of the facts and circumstances of the case are not only in harmony with a contrary view, but also corroborative of the facts of which plaintiff's points are predicated ; but all these were for the calm and dispassionate consideration of the jury. With the exception of the *degree* of corroboration, and for the purposes of this case, the correctness of the statement above quoted may be conceded ; but what had it to do, legitimately, with any question upon which the jury had to pass ? We are unable to see that it had

anything. It could serve no other purpose than to mislead the jury and divert their minds from the real questions in the case. That was undoubtedly its tendency, and to what extent it may have operated in that direction, if at all, it is impossible for us to know.

In Catasauqua Manufacturing Co. v. Hopkins et al., 141 Pa. 30, a question similar in principle at least arose. That was an action for conspiracy to defraud. The court called attention of the jury to the fact that if there should be a verdict and judgment for plaintiff, defendants would not be entitled to the benefit of the exemption laws, and would be liable to arrest and imprisonment. We held that it was error to do so. Referring to the assignment relating to that part of the charge wherein the jury was instructed as to the consequences of a finding against the defendant, our Brother WILLIAMS said: " This was a mistake. The jury should determine the questions submitted to them, upon . the evidence, and not upon the possible consequences of a given verdict to either party : Com'th v. Switzer, 134 Pa. 383. Whether the defendant is able to pay a judgment if one is entered against him, whether he will be entitled to the benefit of the exemption laws, or liable to arrest on a capias ad satisfaciendum are questions with which the jury have nothing to do. They can serve no other purpose than that of enlisting the sympathies of jurors in behalf of defendants, and so obscuring the real questions to be decided."

Again, that portion of the charge recited in the 7th specification is in the same line. The learned judge there said :

" There is a principle underlying this case, gentlemen of the jury, which perhaps is more precious to a man than bonds and gold; it is a man's reputation. In this case the reputation of the defendant is at stake."

This is, if possible, more objectionable than the other, and is clearly within the same condemnation.

We find nothing in the evidence that warrants that part of the charge recited in the second specification.

In view of the undisputed facts of the case, we think the plaintiff was entitled to an unqualified affirmance of her fourth point for charge, recited in the 9th specification of error.

Judgment reversed and a venire facias de novo awarded.