Gerz v. Weber et al., Executors, Appellants.

*Decedent's estate—Board and nursing.*

Where a claim is made by a son-in-law against the estate of his mother-in-law for board and nursing, and no proof is made of a contract to pay for the same, the presumption is strongly against the existence of any such relation as will justify the inference of an implied contract: McHenry's Appeal, 1 Adv. R. 689; Houck v. Houck, 99 Pa. 554; Patton v. Conn, 114 Pa. 186.

*Evidence—Competency of witness—Adverse interest—Act 1887.*

In a suit against executors a pecuniary interest in the estate will not exclude the testimony of witnesses called to disprove a claim against the estate, their interest not being adverse to the right of the decedent.

*Unduly favorable charge.*

The charge of the trial judge in this case criticised as unduly favorable to the plaintiff and calculated to mislead the jury as to the proper force and effect of the evidence.

Argued May 17, 1892. Appeal, No. 143, July T., 1891, by defendant, Otto Weber et al., executors of Theresa Demarra, deceased, from judgment of C. P. Lancaster Co., Feb. T., 1890, No. 33, on verdict for plaintiff, J. W. Gerz. Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and HEYDRICK, JJ.

Assumpsit for nursing, boarding, etc., of decedent.

The facts appear by the opinion of the Supreme Court.

The court charged the jury in part as follows, by PATTERSON, J.:

[" We cannot say to you, as requested, that the plaintiff cannot recover in this action. The facts and circumstances are such, that when presented to you, we cannot say that the verdict must be in favor of the defendants.] [5] In the case cited to support that view, it is argued that the services were rendered by the daughter, a married daughter. [Now, in this case, while Mr. Gerz, the plaintiff, is the son-in-law of this woman who left a will at the time of her death, there is no proof that he did not furnish anything to her. There is proof here by some of the witnesses, that Mrs. Gerz, her daughter, carried her up to her room when she was sick. But did not Mr. Gerz furnish the house where she lived, carry up the bedding to keep her warm, and the food to feed her, and all this kind of thing?] [6] [Now, the law does not require a special contract between this

dead person and Mr. Gerz, who is only a son-in-law, in order to enable him to recover; it does not require a special contract or agreement. If he did as a son-in-law anything in this matter for this mother-in-law, he has a right to charge for it.] [7] [There is no allegation at all on the part of the plaintiff here that there was a contract between this old lady who died and Mr. Gerz, or between the old lady and her daughter Rosa, Mrs. Gerz. There was a good deal said about a contract; but they did not sue on a contract. If a person does work for another, or supports another who comes to the house, without a contract, he can support an action to recover for that support by showing that what he asks to recover is a reasonable price. That is what was done in this case.] [8] [As regards the price or the pay you should allow this plaintiff, that depends upon the evidence.] [14] Some made it $4.00 and some $5.00 a week, and some cut it down as low as $1.00 and $1.50, where the person was sick, and required nursing day and night. Now all this evidence is for you to consider. [You can make it the lowest or the highest price—whatever you think is right.] [14] I need not refer to those five or six weeks, when this old lady was attacked by paralysis. There is a dispute about that. There is a contradiction of testimony in regard to other times when it was alleged she was sick and required attention. Yet there does not appear to be any contradiction about those five or six weeks at the end of 1889, when she died; and it was previous to that, as both parties have in their proof admitted, that for five or six weeks she was prostrated by paralysis. Now from the evidence you must judge whether such attention, as the proof shows, was given to her. And who attended to her; who provided for her? [It is true that her daughter Rosa, while she was there, sick at Gerz's, in this last sickness, waited on her. Mrs. Gerz attended to her; but the son-in-law has a right to charge for the services of the wife, just as much as he had a right to charge for his services;] [9] and [it is not disputed but that he found everything that was necessary to make her comfortable, while she was with him, and everything necessary to provide for her wants, such as food, covering, and so forth.] [13]

["Now, as regards the amount of the compensation you will allow the plaintiff, that depends upon the evidence, and upon

the view you, gentlemen, take of that evidence.] [14] . . . .
["Now, gentlemen, the amount that this plaintiff is entitled to
depends upon you, upon your judgment, after looking at all the
evidence on both sides.] [14] . . . .

["If you think that Mrs. Gerz did all this work for her
mother while she was at Mr. William Gerz's, that he found
everything that was necessary to make her comfortable in the
way of food, and comfort and covering, then the doctrine that
has been advanced here might avail the defendants.  Because
they say that a daughter cannot recover for her services to her
mother, unless she prove a special contract, and that under this
construction of the law the husband is in no better condition.
It is strange law; it is new law to me; but we will permit it
to go to you as the law in this case.  Hence you must look at
the evidence, and say whether Mrs. Gerz did all this and found
all this, or whether Mr. Gerz did it.  The plaintiff is Mr. Wil-
liam Gerz.  He makes this claim for this boarding and care
and services rendered to her, while she was there with him.] [10]
Then, gentlemen, there is some dispute about the time.  The
plaintiff alleges she was there about two years.  The other
side deny that, and they call witnesses on their side to disprove
that.  You must look at that question, and say how long she
was there; and you will say whether or not when she was there
she went only to visit, and if so, how frequently—on Sunday,
and came back on Sunday in the evening or on Monday morning,
and whether that should be deducted from the time she was
there or not.  You will again consider, if you believe some of
the witnesses, whether this old lady did any work while with
Mr. Gerz, to compensate for her board and for the attention
given to her, and you will consider whether this old lady ever
intended or expected to pay for this care and attention.  It
was alleged that this was done without any intention on her
part of paying, that she never intended to pay for it.  The tes-
timony of Annie Haberbusch shows what disposition was made
of it.  She said, when she died she would be paid right well.
Where was the wife in this claim?  That does not amount to a
contract.  But it only shows what the view and the mind of
this old lady was.  [But, as I said before, it does not require a
contract to bind the estate for whatever services he rendered

in the way that I have mentioned, in the way of covering, and shelter, and warmth, and food and things of that kind.] [11] . . .

["It is a question of fact entirely for your consideration, both as regards the time this old lady was with Mrs. Gerz, and as regards what services she did, if she did any, and as regards the price charged, whether it is too great or too little, and whether it is just and right.] [12] . . . .

Verdict and judgment for plaintiff. Defendant appealed.

*Errors assigned* were (1–4) rejection of evidence, recited in opinion of Supreme Court, quoting offers; (5–14) portions of charge in brackets, quoting them; (15) charging on plaintiff's evidence, and omitting to charge on defendant's evidence or theory as to presumption from relationship; (16) the charge as a whole was misleading.

*J. E. Snyder*, with him *J. Hay Brown*, for appellants, cited, as to competency of witnesses: Porter v. Nelson, 121 Pa. 640; Jackson v. Payne, 114 Pa. 67; as to right to recover: McHenry's Ap., 1 Adv. R. 689; Houck v. Houck, 99 Pa. 554; Patton v. Conn, 114 Pa. 186; Ulrich v. Arnold, 120 Pa. 170; Neel's Admr. v. Neel, 59 Pa. 349; Duffey v. Duffey, 44 Pa. 399; Horton's Ap., 94 Pa. 62; Miller's Ap., 100 Pa. 571; Barhite's Ap., 126 Pa. 404; Moyer's Ap., 112 Pa. 290; as to presumption from family relation: Curry v. Curry, 114 Pa. 371; Thompson v. Stevens, 71 Pa. 169; McConnell's Ap., 97 Pa. 31; as to unfairness of charge: R. R. v. Hoosey, 99 Pa. 499; Greber v. Kleckner, 2 Pa. 289; R. R. v. Alvord, 128 Pa. 42; Fawcett v. Fawcett, 95 Pa. 376; Bisbing v. Bank, 93 Pa. 79; Canal Co. v. Harris, 101 Pa. 80; R. R. v. Brandtmaier, 113 Pa. 610; also as to improper character of claim: Neal's Exrs. v. Gilmore, 79 Pa. 428; Zimmerman v. Zimmerman, 129 Pa. 229.

*B. F. Davis*, for appellee, cited, as to competency of witnesses: Bitner v. Boone, 128 Pa. 567; Duffield v. Hue, 129 Pa. 94; Bell v. Bank, 131 Pa. 318; De Coursey v. Johnston, 134 Pa. 328; Mell v. Barner, 135 Pa. 151; as to relationship of parties: Amey's Appeal, 49 Pa. 126; Smith v. Milligan, 43 Pa. 107; Schoch's Admr. v. Garrett, 69 Pa. 144; as to charge of court: Grantz v. Price, 130 Pa. 415; Linn v. Naglee, 4 Wh. 92; Thompson v. Franks, 37 Pa. 327; Bonner v. Herrick, 99 Pa. 221.

OPINION BY MR. JUSTICE STERRETT, October 3, 1892.

This suit was brought by J. W. Gerz against the executors of his mother-in-law, Theresa Demarra, to recover for boarding the decedent, and for services rendered to her while she was an inmate of his family.

It appears from the testimony that in 1887, shortly after the death of her husband, Mrs. Demarra ceased housekeeping, rented her house in Lancaster and went to live with her six children, Joseph Demarra, Jeanette Gerz, Charlotte Lagneau, Josephine Weber, Charles Demarra, and Rosa Gerz, wife of plaintiff, all of whom were married and had homes of their own respectively. She first went to live with her daughter Charlotte Lagneau, and after remaining there until December, 1887, she lived with her daughter Jeanette Gerz in Reading. In March, 1888, she returned to Lancaster, and, during the next eight or nine months, divided her time among her daughters Mrs. Weber, Mrs. Lagneau, Mrs. Gerz, wife of plaintiff, and her son Joseph, all of whom resided there. In October, 1889, while making her home temporarily with plaintiff and his wife, she became partially disabled by paralysis, and required some personal attention which was given by her daughter Mrs. Gerz and other members of the family. In December of that year she sent for her daughters Charlotte and Josephine, and, expressing a wish to be with one of them, was taken to the home of the latter and remained there until her death in January, 1890.

It was alleged by defendants that no demand for boarding or services of any kind was ever made or contemplated by any of her children or sons-in-law, except the plaintiff J. W. Gerz; that when she was about leaving his house, he demanded payment for six weeks' boarding and services during the period she was disabled by paralysis, and that the amount thus demanded was promptly paid to him by Mrs. Lagneau in the presence of her sister Mrs. Weber. The defendants offered to prove by the former that she was present when her mother was taken away from plaintiff's house in December, 1889, and that he objected to her removal " until his bill was paid, for services rendered and for boarding furnished ; that it was so paid and he said it was all right." They also offered to prove substantially the same facts by Mrs. Weber. Both witnesses

were objected to by the plaintiff and excluded on the ground that they are respectively legatees under their mother's will and therefore incompetent to testify to what occurred in her lifetime. The first four specifications of error relate to the rejection of said offers and may be considered together.

The proposed evidence was not only relevant, but, if it had been received, and accredited by the jury, it would have been practically conclusive against the claim in suit. The only question is, were the witnesses incompetent because they are respectively legatees under their mother's will, or for any other reason?

The answer to that must be found in the provisions of the act of May 23, 1887, P. L. 158, the fourth section of which declares : " In any civil proceeding . . . . no liability for costs, nor the right to compensation possessed by. any executor, administrator or any other trustee, nor any interest merely in the question on trial, nor any other interest, or policy of law, except as is provided in section five of this act, shall make any person incompetent as a witness." The only exception in section five that can have any bearing on the question is clause " (e)," viz.: " Nor, where any party to a thing or contract in action is dead or has been adjudged a lunatic and his right thereto or therein has passed, either by his own act or by the act of the law, to a party on the record who represents his interest in the subject in controversy, shall any surviving or remaining party to such thing or controversy, or any other person, *whose interest shall be adverse to the said right of such deceased or lunatic party,* be a competent witness to any matter occurring before the death of said party," etc.

It is quite clear that the interest of neither of the witnesses in question was adverse to the right of their now deceased mother, Theresa Demarra. On the contrary, they were called to prove that the claim in suit against her executors has no just foundation ; that in December, 1889, the party now pressing said claim presented a demand, in full of all he then had or claimed to have against Mrs. Demarra, and that the same was then and there fully paid by one of said witnesses. If that be true, it raises a very strong presumption that plaintiff had no further claim against the estate of his mother-in-law, and when considered in connection with other undisputed

facts, that presumption ought to be conclusive, unless clearly and positively rebutted. The matters which the witnesses were called to prove were certain conversations, etc., by them with the plaintiff in the lifetime of their mother and in her presence. Their interest was therefore not adverse to the right of their since deceased mother, and there is nothing in any of the provisions of the act that renders them or either of them incompetent to testify to the matters recited in the specifications of error. The act is not susceptible of any other reasonable construction. We are therefore of opinion that the court erred in holding that the witnesses were incompetent.

We are also of opinion that the charge of the learned trial judge was unduly favorable to the plaintiff and calculated to mislead the jury as to the proper force and effect of the evidence.

The undisputed facts of the case appear to bring it within the principle of McHenry's Appeal, 1 Adv. R. 689, in which it was held that a son-in-law cannot recover for nursing, etc., of his mother-in-law where it appears that the decedent, an aged woman, had for years divided her time between her son and daughter, wife of the claimant, living with each of them, at stated intervals, as a member of their respective families, without paying or agreeing to pay for such care and attention as her age and the state of her health required. In such cases the presumption is strongly against the existence of any such relation as will justify the inference of any implied contract: Houck v. Houck, 99 Pa. 552; Patton v. Conn, 114 Pa. 186. Such claims are generally an afterthought, inspired by unworthy motives.

Judgment reversed and a venire facias de novo awarded.