## Commonwealth *v.* Robert P. Harris, Appellant.

168     619
  34 SC ¹    6
| 168     619
| 35 SC  116

*Criminal law—Embezzlement by consignee.*

On an indictment for embezzlement as consignee, the judge charged: "A consignee is a person to whom merchandise or personal property of any kind is committed for the purpose of sale;" *Held*, to be correct and sufficiently comprehensive to direct the attention of the jury to the distinction between a consignment for sale on the consignor's account and a purchase where the title passed though the goods were not paid for.

In such a case it is not improper for the trial judge to call the attention of the jury to the fact that the law regards the act of a consignee in appropriating consigned property to his own use as a very serious offense which should not escape punishment; if he also cautions the jury in equally explicit terms that, for the very reason of the seriousness of the charge, the prisoner should not be convicted upon slight evidence.

*Criminal law—Reading to jury act of assembly containing penalty.*

On the trial of an indictment for embezzlement, it is not error for the court at the beginning of the charge to read the act of assembly defining the offense, although in doing so the jury are informed what the penalty is which the law imposes for the offense: Commonwealth v. Switzer, 134 Pa. 383; Catasauqua Co. v. Hopkins, 141 Pa. 30 (45); and Rosenagle v. Handley, 151 Pa. 107, distinguished.

*Criminal law—Embezzlement by consignee—Evidence.*

The defendant wrote a letter under a printed letter head of "Commission Merchant" to the prosecutor suggesting a "Consignment" of grapes. In the letter the defendant offered to "handle all the grapes you can possibly ship on commission, or will buy outright from you." To this letter the prosecutor replied by telegram: "Will ship you a mixed lot . . . . for sample." Two days later he wrote that the shipment had been made. Neither telegram nor letter took any notice of the alternative to sell on commission, or to buy outright. A week later the defendant wrote a second letter ordering more grapes of specified kinds, mentioning the price at which he had sold some, and concluding "send the bill with this order, and I will forward you a check for full amount you forgot to state in your letter how much the grapes was write and let me know send bill for full amount." In answer to this the prosecutor wrote saying: "Will ship . . . . and forward bill of the amount," and further on, "with prices of different kinds that you will take." A few days later the defendant wrote a third letter ordering more grapes, offering a certain amount outright for mixed lots, and repeating the direction to send bill for full amount, and the promise to forward check. *Held*, that the evidence was not sufficient to convict the defendant of embezzlement as consignee.

Argued March 14, 1895.  Appeal, No. 386, Jan. T., 1895, by defendant, from judgment of Q. S. Northampton Co., Oct. T., 1894, No. 27, on verdict of guilty.  Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ.  Reversed.

Indictment for embezzlement as consignee.  Before SCHUY-LER, P. J.

At the trial it appeared that on Sept. 13, 1894, the prisoner wrote to A. B. McKeel, as follows:

" Vegetables a Specialty.  A complete line in season.

| Fresh Fish, | Robert P. Harris, | Sweet Potatoes, |
| | Wholesale Commission | |
| Clams, | Merchant and Shipper | Cranberries, |
| | Fruits, Vegetables, Oysters, &c. | |
| Crabs, | Receiver and Shipper | Green Truck, |
| | of York State | |
| Snappers, &c. | Plums and Grapes. | Strawberries. |

" 220 West Third Street,
"So. Bethlehem, Pa., Sept. 13, 1894.

*" Dear Sir :*

" I am handling a large amount of grapes this season and I understand you are a large shipper  I write you in order to open some business with you if you have began shipping yet you may ship me a consignment of about 500 large and 500 small baskets of Concords by freight for first shipment would prefer them in car lots as I handle large quantities of grapes in ·this section of the country will handle all the grapes you can possible ship on commission or will buy outright from you my charges are 10 Per c all shipments receive my own personal attention  Hoping to hear from you and we can do a big business together this year

" Yours Resp.

" ROBT. P. HARRIS "

McKeel replied by telegraph as follows:

"9th mo. 15th/94

" Will ship you to-day a mixt lot of grapes—5 lb. Baskets. For sample.  By freight.

" Respt. A. V. McKEEL."

He subsequently wrote as follows :

"9th mo. 17th/94 5 P. M.

" ROBERT P. HARRIS,

"*Dear Sir :* Shipt you the 15th inst. by Lehigh Valley RRd.
150—5lb Delaware Grapes

  30  "  Concords  "

   2  "  Niagara  "

"Expected to have written you this morning.

"Please write of what kinds you can do the best with.

"The print stamped with our name will all be found alright.
—Concords & Niagaras now—& Catawbas later.

"Respectfully A. V. McKEEL"

Harris wrote the following letters :

"220 West Third Street,

"So. Bethlehem, Pa., Sept. 21, 1894.

"Mr. A V McKEEL

"*Dear Sir :* Rec your grapes and came in very fine condition
thought they were very nice   Ship me as many as you possibly
can of Delawares Concords and Niagaras as they are the best
selling grapes in this city got 18c for Delawares wholesale
Brightons dont sell very good here also send bill with this
order and I will forward you a check for full amount you for-
got to state in your letter how much the grapes was write and
let me know send bill for full amount and oblige

"Yours Resp

"ROBT. P. HARRIS."

"220 West Third Street,

"So. Bethelehem, Pa., Sept. 29, 1894.

"Mr. A. V. McKEEL.

"*Dear Sir :* Rec your grapes and also letter grapes were nice
you may ship me a car lot of mixed grapes will give you 12c
out right for them as they run Nigras Concords Catawbas
and Linsleys ship as soon as you possibly can also send bill
with grapes for full amount and will forward you a check on
receipt of at once also have sent you stencil wire to me at once
when you ship at my expence and Oblige

"Yours Resp.

"ROBERT P. HARRIS."

Defendant claimed that he bought the goods outright and did not take them to sell on commission.

The court charged as follows :

" The indictment which you have been sworn to try, charges the defendant, Robert P. Harris, with having received into his possession as consignee, a quantity of grapes belonging to the prosecutor, and with having sold the grapes, and with having appropriated the proceeds of sale fraudulently to his own use.

" [The indictment has been framed under the following act of assembly : " If any consignee or factor having the possession of merchandise, with authority to sell the same, or having possession of any bill of lading, permit, certificate, receipt or order for the delivery of merchandise with the like authority, shall deposit, or pledge such merchandise or document, consigned or intrusted to him as aforesaid, as a security for any money borrowed, or negotiable instrument received by such consignee or factor, and shall apply or dispose of the same to his own use, in violation of good faith, with intent to defraud the owner of such merchandise, and if any consignee or factor shall, with like fraudulent intent, apply or dispose of, to his own use, any money or negotiable instrument, raised or acquired by the sale or other disposition of such merchandise, such consignee or factor in every such case shall be guilty of a misdemeanor, and sentenced to pay a fine, not exceeding two thousand dollars, and undergo an imprisonment, not exceeding five years.] " [4]

" [To constitute this offense, the commonwealth must have satisfied you that the defendant received these grapes as consignee. Many of you among the jury understand what is meant by consignee as distinguished from purchaser. A consignee is a person to whom merchandise or personal property of any kind is committed for the purpose of sale.] [1] Where there is a sale, the title to the property, whether the property is paid for or not, passes to the purchaser, but in the case of a consignment, there the title to the property remains in the consignor, and all that the consignee receives is the right to sell that property for, and on account of, the consignor. [But you know, gentlemen, the difference between a sale of property and a consignment for the mere purposes of a sale.] [2]

" [The first question for you to determine is, what was this contract between the prosecutor and defendant ? Was it a sale,

or was it a consignment? That question you will determine from the letters which have been given in evidence on both sides and from all the other facts and circumstances in the case. If you examine these letters and the other facts in the case and you are unable to say whether beyond a reasonable doubt the defendant is guilty or not, then you must give the defendant the benefit of that doubt and return a verdict of not guilty. If, however, after a careful review of all the evidence in the case, you are satisfied beyond a reasonable doubt that the contract was a consignment then you will inquire further whether the defendant sold the property and appropriated the proceeds to his own use with a fraudulent intent.] [3] It is an element in the case that the defendant must have received the property into his possession. There is no dispute about that. That is admitted. There is another element in the case that the defendant must have sold the property. That is also admitted.

" In the third place it is necessary for the commonwealth to satisfy you that the defendant appropriated the proceeds of the property to his own use. It is admitted by the defense that he did appropriate a part of the money received from the sale of these grapes to his own use. If that was done with a fraudulent intent and the property was consigned to him instead of having been sold to him, then it would be your duty to return a verdict of guilty. If, however, you have a reasonable doubt whether the money was appropriated by the defendant with a fraudulent intent, you must give the defendant the benefit of that doubt and return a verdict of not guilty.

" It has been said to you, and very properly, that in the eye of the law this is a very grave and a very serious offense, that is the offense against which this act of assembly is directed. It has been said with reason, that you ought not to convict the defendant upon slight evidence. That is very true and a very proper caution to give to the jury, and I repeat it to you now, as I have in substance said, that you must be satisfied from the evidence beyond a reasonable doubt of the guilt of the defendant; and, if you have a reasonable doubt as to any one of the essential features of this case, you must give the defendant the benefit of that doubt and return a verdict of not guilty.

" But there is another view of the case which it is proper I should call your attention to. Whilst beyond all question in

contemplation of the legislature, this offense of a consignee appropriating property consigned to his own use is a most serious offense, and because it is a most serious offense, if you are satisfied beyond a reasonable doubt of the defendant's guilt, then all the more important it is that the defendant who is guilty of such an offense should not escape the punishment which the enormity of the offense entitles him to receive.] " [5]

The court refused to instruct the jury to find a verdict of not guilty.

Verdict of guilty, upon which the court sentenced the prisoner to pay a fine of one dollar, and to undergo an imprisonment in the county prison for one year.

*Errors assigned* were (1-6) above instructions, quoting them.

*Russell C. Stewart,* for appellant.—The defendant was a purchaser of the goods and not a consignee: Com. v. Newcomer, 49 Pa. 478; English act of Geo. IV. c. 94; Wood v. Rowcliffe, 6 Hare, 183; Monk v. Wittenbury, 2 B. & Ad. 484.

We think the court committed clear error in referring to the definition of the word "consignee" as being a matter of no importance, and in giving to the jury the defective definition we complain of in our first assignment of error: Wharton's Criminal Pleading and Practice, 8th ed. sec. 709; Meyers v. Com., 83 Pa. 143.

Instead of telling the jury they were to judge, the court should have construed these written instruments, these letters, and said there was nothing in them to convict the defendant: Com. v. McManus, 143 Pa. 97; Hargrave's note to Coke, Litt. 155; Wharton's Criminal Practice and Pleading, 8th ed. 807.

The court first read the entire section of the act to the jury, gave them the definition and the punishment. Courts should never refer to the punishment prescribed by the act: Com. v. Switzer, 134 Pa. 389: Catasauqua Mfg. Co. v. Hopkins, 141 Pa. 45.

If we are correct in our position that the court should pass on the legal questions, the letters being in writing, the court should have done so, and should have directed the jury to return a verdict of not guilty: Bishop on Criminal Procedure 3d ed. sec. 977; People v. Bennett, 49 N. Y. 137.

*A. C. La Barre*, district attorney, for the commonwealth.— The contract between the prosecution and the defendant was one of consignment, and Harris was a consignee : 3 Am. & Eng. Ency. of Law, 317 ; Story on Agency, sec. 33.

The complaint in appellant's argument that the court's instruction to the jury was erroneous because the court did not charge the jury that the acceptance of the trust was necessary to constitute the contract of consignment, is without force, because the defendant's proposition to the prosecutor was in evidence, the prosecutor complied with the proposition, the minds of the parties therefore having met, and because of the acceptance of the grapes by the defendant.

A jury may take out with them any writings that have been given in evidence, without distinction as to sealed or unsealed, except the depositions of witnesses : Alexander v. Jameson, 5 Binn. 238 ; M'Cully v. Barr, 17 S. & R. 445 ; Sholly v. Diller, 2 Rawle, 179 ; Spence v. Spence, 4 Watts, 165.

Although parts of a charge when taken separately may seem to be erroneous and indicate a leaning to one side or the other, there is no error if, taken as a whole, the questions at issue are fairly left to the jury : Reese v. Reese, 90 Pa. 89 ; Lehigh Valley R. R. v. Brandtmaier, 113 Pa. 610 ; Reeves v. Del., Lack. & West. R. R., 30 Pa. 454 ; Irvin v. Kutruff, 152 Pa. 609 ; Peirson v. Duncan, 162 Pa. 187 ; Fox v. Fox, 96 Pa. 60 ; Henry v. Klopfer, 147 Pa. 178.

OPINION BY MR. JUSTICE MITCHELL, May 30, 1895 :

The law was correctly given to the jury by the learned judge below.   The turning point in the case was the capacity in which the appellant received the grapes, whether as consignee or as purchaser.   The definition of consignee by the judge was accurate, and sufficiently comprehensive to direct the attention of the jury to the nature of the contract, and the distinction between a consignment for sale on consignor's account and a purchase where the title passed though the goods were not paid for.

Nor was there any error in reading the act of assembly to the jury.   It was done at the beginning of the charge as a concise and accurate mode of informing the jury of the exact offense for which the prisoner was on trial.   That in reading

the whole section of the act, the judge necessarily informed the jury what the penalty was which the law imposed for the offense, was merely an incidental result, not at all analogous to the specific direction of the jury's attention to the consequences of a verdict of guilty which was held to be erroneous in Com. v. Switzer, 134 Pa. 383 ; Catasauqua Co. v. Hopkins, 141 Pa. 30 (45) ; and Rosenagle v. Handley, 151 Pa. 107.

The learned judge in his charge called the attention of the jury to the fact that the law regarded the act of a consignee in appropriating consigned property to his own use, as a very serious offense, which should not escape punishment, but he also cautioned them in equally explicit terms that for the very reason of the seriousness of the charge the prisoner should not be convicted upon slight evidence. We are unable to perceive anything in this of which the appellant has any cause to complain.

On the main issue however we think the case is with the appellant. It is peculiar in the respect that substantially the whole evidence is in writing. The dealings between the prosecutor and the prisoner were entirely by letter and telegram, and the judge submitted the case to the jury on these papers, and " all the other facts and circumstances." These other facts were, first, the shipment of the grapes at prisoner's request and their receipt by him, facts not disputed, but which were equally consistent with guilt or innocence ; secondly, failure of the prisoner to make immediate returns, a fact also undisputed but depending for its character on the capacity in which the receipt and sale of the goods were made ; and, thirdly, the prisoner's announcement of himself on his letter headings as a commission merchant, and putting his dwelling place in the same heading where it might well be understood as his business address.

This was but a mere makeweight at the most. None of these outside facts and circumstances bore directly on the issue which was the fraudulent appropriation by a consignee or factor of the proceeds of sales of consigned goods. Without a foundation of evidence of this crucial fact all the other matters are immaterial, and the evidence of this fact as already said must be found, if at all, in the writings. The parties never met personally until after the transactions were past, and when they did

meet nothing is testified to by the prosecutor which is material
to the issue.   We must turn therefore to the letters.   The first
of these is from appellant to the prosecutor asking to open
business with him, and suggesting a " consignment."   This
word and the printed letter head of " commission merchant "
by themselves might as the commonwealth contends sustain the
inference that the transaction was a consignment to a factor,
but it is plain from the context that the word " consignment "
was used in the sense of " shipment," for the offer immediately
follows to " handle all the grapes you can possibly ship on com-
mission or will buy outright from you."   To this letter the
prosecutor replied by telegram " will ship you a mixed lot
. . . . For sample," and two days later, by letter announcing
the shipment as having been made.   Neither telegram nor let-
ter took any notice of the alternative to sell on commission or
to buy outright which appellant's letter had offered, nor made
any mention of prices or terms either for sale or commission.
Both parties seem to have regarded this first transaction as pre-
liminary and experimental, and left it indefinite in all respects.
A week later appellant wrote the second letter ordering more
grapes of specified kinds, mentioning the price at which he had
sold some, " got 18c. for Delawares wholesale," but concluding
" send bill with this order and I will forward you a check for
full amount you forgot to state in your letter how much the
grapes was write and let me know send bill for full amount."
While the mention of the price which he got for the Delawares
points somewhat towards a sale on commission, this construc-
tion is clearly overborne by the call for a bill, the promise to
send check for full amount, and the reminder that the shipper
had forgotten to state how much the grapes of the first lot were
to be.    The substantial part of this letter, if not entirely incon-
sistent with a sale on commission indicates much more clearly
a purchase, and was so understood by the prosecutor, for in his
answer after acknowledging the receipt of the letter, he says
" will ship . . . . and forward bill of the amount " and further
on, " write prices of different kinds that you will take."    A few
days later the appellant wrote the third letter ordering more
grapes offering 12 cents outright for mixed lots and repeating
the direction to send bill for full amount and the promise to
forward check.   This closed the transactions.   Two days after

the date of the last letter the prosecutor came to South Bethlehem and saw appellant for the first time, but nothing took place between them which throws any light on the transactions by letter, for though the prosecutor testifies that the goods were sent "on commission" yet he nowhere says that fact was communicated to the appellant, and his cross-examination indicates apparently that he used the words "on commission" as synonymous with "on credit."

As already said the case must be sustained, if at all, on the letters. They show that the business was conducted with almost incredible looseness on both sides. The prosecutor did not know what he was to get for his goods, which on his present theory was to depend entirely on what the appellant sold them for, a question he never asked, while on the other hand the appellant on his theory was selling goods without knowing what they had cost him, and whether he was making a profit or a loss. Neither version is consistent with the most ordinary principles of business care and prudence. But looseness of method is not fraud, and something more was necessary to sustain the indictment. The basis of the whole case was fraudulent misappropriation by a consignee or factor, and the commonwealth failed to prove that that was the prisoner's relation to these transactions. Without that foundation there was nothing to which any of the other evidence in the case could be material, and the judge should have affirmed the appellant's request, and directed a verdict of not guilty.

Judgment reversed.