Hoagland *v.* Mulford, Appellant.

Argued December 2, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*W. Horace Hepburn, Jr.,* for appellant.—Where the fact that testimony is hearsay does not appear until the cross-examination, it should be stricken out if objected to before the witness leaves the stand: Pauza v. Coal Co., 231 Pa. 577; Forster v. Rogers Bros., 247 Pa. 54; Kleppner v. R. R., 247 Pa. 605; Devling v. Williamson, 9 Watts 311; Critzer v. Donovan, 289 Pa. 381.

Under all the evidence submitted by plaintiff, binding instructions should have been granted for defendant.

It is error for the court to refer, in his charge, to the age and earning capacity of plaintiff, where this is not in issue: Monier v. Transit Co., 227 Pa. 273; Dooner v. Canal Co., 164 Pa. 17; Stokes v. Miller, 10 W. N. C. 241.

*W. Logan MacCoy,* of *MacCoy, Evans, Hutchinson & Lewis,* for appellee, cited: Kaufmann's Est., 293 Pa. 73; Cloyd v. Reynolds, 44 Pa. Superior Ct. 81; Roseburg's Est., 47 Pa. Superior Ct. 255; Claghorn's Est., 181 Pa. 608.

OPINION BY MR. JUSTICE WALLING, January 6, 1930:

About 1918, H. K. Mulford, the defendant, an experienced druggist, started the manufacture of certain remedies, on which he held a patent, known as "Medicinal Colloids." In February, 1920, he had the business incorporated under a charter obtained in New Jersey, by the name of "American Chemical Laboratories, Inc." The stock had a par value of $100 per share, five hundred shares of which were given the defendant for the prop-

erty, etc., which he turned over to the corporation. Its principal place of business was in Philadelphia. Mulford was president and Dr. W. J. Burd, of Belvidere, New Jersey, also a stockholder, was secretary and treasurer. The plaintiff, L. B. Hoagland, a practicing physician of Oxford, New Jersey, on January 2, 1922, bought fifty shares of the corporation's stock and paid the treasurer $5,000 therefor. On the averment that he was induced to buy the stock through the fraud and falsehood of Mulford, he brought this action of trespass against him for deceit. Plaintiff's contention is that defendant falsely told him, inter alia, that the corporation was in a flourishing condition, making lots of money and paying annual dividends of eight or ten per cent to its stockholders. In addition to the stock given defendant, the corporation seems to have issued stock to the par value of $14,500. The venture was experimental and seems to have failed. In any event, plaintiff received no dividends on his stock and contends that it has no value. The jury found for plaintiff for the $5,000 and accrued interest, and the defendant has appealed.

The record brings to our attention fourteen assignments of error. The most serious question is raised by the eleventh assignment, which complains of the following statement in the charge of the trial judge, viz.: "I am going to say this to you, gentlemen: some persons have to work pretty hard to accumulate money. The plaintiff here is a physician. He has reached the period of maturity, has passed his best earning days, presumably. Five thousand dollars is a sum of money that may be considered fairly large by some persons. It is a very reprehensible thing to induce people to part with money for stock by falsely representing to them its value, by deceiving them as to the dividend returns. This case merits your most serious attention, in order that you may arrive at an honest conclusion and a fair conclusion as to whether Doctor Hoagland was led to part with five thousand dollars through deceit practiced

upon him intentionally or whether he,—as frequently happens,—was speculating or making what he thought was an investment of his money and acted upon his own judgment or the judgment of his friend, Burd, without any fraud on the part of Mr. Mulford." The case hinged on the facts as the jury might find them and should have been submitted impartially and so as to avoid arousing sympathy or prejudice. All men stand equal in a court of justice and that a suitor may be advanced in life with his best earning days behind him and to whom the amount involved is a considerable sum, is irrelevant, and its statement from the bench, however innocently made, tended to divert the minds of the jurors from the real questions at issue, especially when followed by a statement of the reprehensible act of the sale of stock by false representations. True, the trial judge, in the instant case, followed by calling the jury's attention to matters pertinent to the case and admonishing them to decide according to their mature judgment, actuated by a desire to be fair to both parties. While this was eminently fitting, we are by no means certain that it obliterated the effect of the instructions complained of and hence this assignment of error is sustained. The use of intemperate language in the charge of a trial judge calls for a reversal: Weiss v. London Guarantee & Accident Co., 280 Pa. 325. "A litigant has a right to a trial by a fair and impartial jury whose consideration of his case is not influenced by any language of the court which would create resentment or prejudice against him": Monier v. P. R. T. Co., 227 Pa. 273. "The court should not call the attention of the jury to the possible consequences of a given verdict to either party, the effect being to enlist the sympathies of the jury and obscure the real questions to be decided": Rosenagle v. Handley, 151 Pa. 107. See also Catasaqua Mfg. Co. v. Hopkins, 141 Pa. 30.

Waiving the question of the effect of the failure to set up the statute of limitations in the pleadings, there was ample evidence of active concealment of the fraud to

prevent binding instructions for defendant on that ground. "If the wrongdoer adds, to his original fraud, affirmative efforts to divert or mislead or prevent discovery, then he gives to his original act a continuing character by virtue of which he deprives it of the protection of the statute until discovery": Smith v. Blachley, 198 Pa. 173, 179; and see Cloyd v. Reynolds, 44 Pa. Superior Ct. 81.

The question of fraud depends on the status of the corporation prior to and at the time of plaintiff's purchase and, as to that, the question of the absence of dividends thereafter was not pertinent.

The true measure of damages is the difference between what plaintiff was induced to pay for the stock and its actual value at the time of the purchase. If it had no value, the damages would be what he paid. See Curtis v. Buzard, 254 Pa. 61; Browning v. Rodman, 268 Pa. 575; Long v. McAllister, 275 Pa. 34. This we understand accords substantially with the instructions of the trial judge.

If plaintiff parted with his money in reliance upon the false statements of the defendant, that he also may have been somewhat influenced by the assurances of Dr. Burd would not defeat this action. Even if the latter and the defendant were joint participants in the fraud, which is not averred, an action would lie against either.

Complaint is made as to some other alleged trial errors, but as those questions may be presented differently at the next trial, it is unnecessary to discuss them now.

The judgment is reversed and a new trial granted.