Commonwealth *v.* Johnston, Appellant.

Argued March 10, 1930.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham, Baldrige and Graff, JJ.

*Horton Smith,* and with him *Paul J. O'Donovan* and *Joseph Levy,* for appellant.

No appearance and no printed brief for appellee.

OPINION BY GAWTHROP, J., April 18, 1930:

Defendant appeals from a sentence imposed on a bill of indictment charging him with larceny. At the time of the alleged commission of the offense he was a federal prohibition agent connected with the Pittsburgh office. On the evening of February 11, 1928, he went to the home of William Johnson in Somerset County, in company with two other prohibition agents and a local constable. The constable was armed with a search warrant. The Johnson family consisted of himself, his wife, a married daughter, a son aged seventeen years, and two younger boys. When the officers arrived at the house about 9:30 P. M., Johnson and his wife and the older son were in bed on the second floor, and the daughter was in the dining room and the younger boys were downstairs. Defendant and the constable walked into the dining room and inquired of the daughter for her father. She called to the latter, who answered that he would come downstairs as soon as he put on his clothes. Defendant, without waiting for the father to appear, went upstairs and entered the bedroom occupied by the father, the mother and the older son, and proceeded to make a search of the upstairs for intoxicating liquor and material used in the manufacture of the same. The constable remained in the dining room. The mother testified that the son and the father went downstairs and that she remained with the defendant until he went down the steps and she followed him. Defendant admitted that after making a search of the downstairs he went upstairs again and was followed by the father and the son. The constable testified that the son followed the defendant upstairs. The father, the mother,

the daughter and the son testified that there was no other person upstairs while defendant was there on the second occasion, and that when he returned downstairs he walked directly out of the house. The wife testified that when she went to bed she placed under her pillow a bill fold containing $750 in currency and that just after defendant came downstairs the second time she went to look for the pocket book and discovered that it was gone and "everything was torn up, my pillows thrown on the floor and my covers and mattress all like half and half," and that she came downstairs immediately and accused defendant of stealing her money. Defendant admitted that she made this accusation. It is undisputed that he requested that a search be made of his person and that the money was not found. On the same evening Mrs. Johnson made an information before a justice of the peace, charging defendant with stealing the money.

The first assignment of error raises the question of the sufficiency of the evidence to support a conviction. After a careful reading of it, we are not convinced that it was insufficient. It is true that no person testified that he saw defendant take the money, and the evidence tending to prove the corpus delicti and to establish defendant's connection with the offense was wholly circumstantial. In Com. v. Byers, 45 Pa. Superior Ct. 37, this court approved the following statement of the rule by which the probative value of circumstantial evidence is to be measured:

"When a crime charged is sought to be sustained wholly by circumstantial evidence, the hypothesis of guilt or delinquency should flow naturally from the facts and circumstances proved, and be consistent with them all. The evidence of facts and circumstances must be such as to exclude to a moral certainty, every hypothesis but that of guilt of the offense imputed, or in other words the facts and circumstances must not only all be consistent with and point to the guilt of

the accused, but they must be inconsistent with his innocence.''

Assuming, as we must, that the jury found the facts and circumstances supported by the evidence most favorable to the Commonwealth, we cannot declare as matter of law that they are consistent with anything but defendant's guilt. Viewed in the light most favorable to the Commonwealth, the jury could find, beyond a reasonable doubt, that the pocket book was under Mrs. Johnson's pillow at a time when the defendant alone was upstairs, and that no other person had an opportunity to take it. It follows that the question of defendant's guilt or innocence was for the jury.

The only other question raised in behalf of appellant which merits consideration is whether the charge of the court was so substantially erroneous and prejudicial to him as to amount to reversible error. It must be answered in the affirmative. As already stated the Commonwealth depended upon circumstantial evidence to connect defendant with the alleged offense. The court charged: ''Nobody saw him take it, but circumstantial evidence is introduced, from which you may infer and from which the Commonwealth asks you to infer, that he did take it. Now circumstantial evidence is competent evidence; it is legal evidence, and some times circumstances may be stronger than word of mouth evidence given by eye witnesses.'' We think the court should have explained to the jury the meaning of circumstantial evidence and given them some information as to the rule by which the probative value of such evidence is to be measured. Instead of doing this he merely gave the jury the idea that such evidence may be stronger than direct evidence. In the circumstances we regard the charge as inadequate in this respect. The inadequacy is rendered more serious by the language which immediately followed the reference to circumstantial evidence. The court said:

''This defendant went there with a constable who

had a search warrant for the house; they had a right to go there, but you will scrutinize his conduct; these men went there about nine-thirty at night, along the first ten or eleven days in February; about when did it grow dark at that time? How many hours did they wait before they tried to serve that warrant? They went there about bed time, it was for people in the country; is there any explanation why they couldn't serve that warrant in daylight? Is there any explanation why they went there when people were presumed likely to be in bed and their doors locked? Did these people demean themselves as reasonable, conduct themselves reasonably when they approached that house and went through it? Did they have occasion to do those things they did there in the manner they did them armed with the authority of the law? The law doesn't authorize people to be less gentlemanly when they have a warrant than when they don't have it; it probably imposes a greater matter of courtesy and care when armed with the authority of a warrant than when not so armed. Any way, you will look into all this conduct and surrounding circumstances.''

In our view this instruction injected into the case reference to matters which had no bearing on it, were not grounded upon facts in evidence, and tended to prejudice the minds of the jury against defendant. It was more in the nature of an argument for the Commonwealth than a judicial presentation of the case and a fair and impartial submission of the evidence. Under all our authorities this is sufficient ground for a reversal. See Hoagland v. Mulford, 298 Pa. 588.

The judgment is reversed and a new trial awarded.